*640 Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton.
If the issue is framed in terms of whether a totally unrestrained use of such dogs in a dragnet fashion would be tolerable in a free society, one’s answer might likely be no. W.R. LaFave, Search and Seizure, 2da ed., Sec. 2.1(e), pág. 315.
Coincidimos con la Parte V de la opinión del Tribunal en tanto revoca el dictamen recurrido que confirmó la supresión de la evidencia incautada. Al igual que la mayoría entendemos que en esta etapa la intervención con el equipaje de los acusados fue razonable. Las circunstancias particulares de necesidad especial para prescindir de una or-den judicial en este caso “fueron ejemplificadas en la sospecha individualizada razonable que, anterior al examen del olfato canino, poseían los agentes del orden público [a la luz de una extensa investigación criminal] y que quedó corroborada una vez se culminó el examen”. (Enfasis suplido.) Opinión del Tribunal, pág. 636. A pesar de esto, nos vemos obligados a disentir en este caso por dos razones de trascendencia constitucional.
En primer lugar, la mayoría aprovecha la oportunidad para sugerir, de manera innecesaria y contradictoria, que la utilización de un examen de olfato canino para detectar sustancias controladas en los efectos personales de una persona bajo ninguna circunstancia constituye un registro per se en el sentido constitucional. Discrepamos de tal razonamiento, pues se podría prestar para justificar el uso al azar y arbitrario de esta intromisión gubernamental hasta en la playa y en las plazas públicas del país, a pesar de que toda la evidencia empírica disponible apunta a que el mar-gen de error del olfato de los perros acarrea un riesgo potencial de infringir el derecho de intimidad de los *641 individuos. En contraste, nos hubiésemos ceñido a los hechos de este caso para resolver, al amparo de nuestra Carta de Derechos, que el examen de olfato canino en controversia fue un registro razonable dado que medió una sospecha individualizada de que los acusados participaban en un esquema de contrabando de sustancias controladas.
Por otro lado, disentimos de la opinión del Tribunal en cuanto al remedio final concedido. Al disponer del caso, la mayoría parte de la premisa inarticulada de que el olfato de una unidad canina es una herramienta tecnológica precisa e infalible. A su vez, el Tribunal no toma en consideración que ni el manejador del can ni el analista forense que preparó el informe de las sustancias incautadas estuvieron presentes en la vista de supresión de evidencia que revisamos en el recurso de epígrafe.
En atención a esa realidad procesal, y contrario a la opinión del Tribunal, devolveríamos el caso al foro de instancia con la instrucción particular de que la admisibilidad final de la evidencia allanada esté sujeta a que el Ministerio Público presente el testimonio de ambos funcionarios en el juicio y que éstos estén disponibles para ser contrainterrogados por la defensa sobre la confiabilidad de las referidas herramientas investigativas. De esa forma se salvaguarda el derecho de confrontación de los acusados bajo la Sexta Enmienda de la Constitución federal, en conformidad con lo resuelto recientemente por el Tribunal Supremo de Estados Unidos en Meléndez-Díaz v. Massachusetts, 129 S.Ct. 2527 (2009).
I
El Ministerio Público presentó sendas acusaciones contra Amaury Díaz Medina y Gerardo Bonano Pérez por violación al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. see. 2401. En esencia, se les acusó de poseer catorce kilos de cocaína con la intención de distribuirlos.
*642 Posteriormente, y antes de la celebración del juicio, Díaz Medina presentó una Moción Solicitando la Supresión de Evidencia, en la cual alegó que las sustancias controladas que dieron lugar a la acusación fueron incautadas mediante un registro realizado en el equipaje de los acusados sin una orden judicial previa. En vista de esto, adujo que la intervención gubernamental fue irrazonable bajo la Constitución del Estado Libre Asociado de Puerto Rico.
En la vista de supresión de evidencia declaró como único testigo el agente Nelson Rosado Cintrón, adscrito a la División de Drogas y Narcóticos de Fajardo. Sin embargo, no testificó el agente Daniel Marín, quien fue el manejador del can (llamado Pirata) que realizó el examen de olfato en controversia. Además, se presentaron dos Certificados de Análisis Químico Forense, mas no testificó el perito que los preparó.
Según se deduce del testimonio del agente Rosado Cintrón, el registro del equipaje de Díaz Medina y Bonano Pérez sin una orden judicial no fue producto de una inspección rutinaria. Los agentes se presentaron al aeropuerto con la unidad canina precisamente para culminar una investigación criminal de varios días y corroborar ciertas confidencias que habían recibido, la cuales apuntaban a la supuesta participación de los acusados en un esquema de contrabando de drogas. Es decir, cuando los agentes llevaron al can Pirata para olfatear el equipaje de los acusados, ya existía una sospecha individualizada y razonable de que Bonano Pérez y Díaz Medina se encontraban trasladando sustancias controladas desde Culebra hasta Fajardo. Luego de que —según le indicó el agente Marín al agente Rosado Cintrón—(1) el can marcara positivo sobre los bultos de los acusados, se procedió a abrir el referido *643 equipaje para confirmar la presencia de drogas. Tras efectuar el registro, los agentes encontraron siete kilos de cocaína en cada uno de los dos bultos incautados, para un total de catorce kilos.
Trabada la controversia, el Tribunal de Primera Instancia declaró “con lugar” la moción de supresión de evidencia. En síntesis, fundamentó su determinación en que el Ministerio Público no presentó prueba admisible de la razonabilidad del registro en la medida en que no produjo el testimonio del agente Marín, quien era el manejador del can. Además, concluyó que no existían los motivos fundados para realizar un registro sin una orden judicial previa del equipaje en su fondo. Bajo fundamentos similares, el foro apelativo denegó el auto de certiorari.
Aún insatisfecho, el Procurador General acude ante nos. En esencia, aduce que el foro apelativo incidió al adjudicar el caso a base de la figura del registro incidental a un arresto, cuando procedía resolver que someter los bultos al olfato canino no constituyó un registro per se. Esto, pues sostiene que aplica la norma de evidencia a plena vista o pleno olfato como excepción a la invalidez de los registros sin una orden judicial.
Así las cosas, mediante la opinión emitida hoy, el Tribunal revoca el dictamen recurrido bajo la premisa fundamental de que “la intervención del equipaje fue razonable al estar directamente relacionada con la previa sospecha individualizada del agente Rosado Cintrón de que su contenido tenía narcóticos”. (Enfasis suplido.) Opinión del Tribunal, pág. 637. En ese sentido, rechaza la teoría esbozada por el Procurador General, que aduce que el examen de olfato canino no fue un registro porque el material delictivo que supuestamente contenía el equipaje se encontraba a plena percepción. Hasta ahí estamos de acuerdo.
Sin embargo, no logramos entender la necesidad de hacer unos pronunciamientos adicionales sobre la naturaleza del examen de olfato canino bajo el Art. II, Sec. 10 de nuestra Constitución, L.P.R.A., Tomo 1. En conformidad con el *644 precepto de autolimitación judicial, tales expresiones son totalmente fútiles e innecesarias bajo el contexto fáctico de este caso, por lo que constituyen meramente dicta. Esto es así, dado que la misma opinión y el razonamiento esbozado en su Parte V reconoce que tanto la intervención con el perro como el registro de los bultos se justificaron al demostrarse una sospecha individualizada previa de que los acusados estaban involucrados en el trasiego de sustancias controladas. Ese es precisamente el criterio que nos limitaríamos a adoptar para llegar al mismo resultado que la mayoría.
Por lo tanto, no podemos suscribir la opinión del Tribunal en su afán de abrir las puertas a una normativa impracticable que, al expresar tajantemente que el examen de olfato canino sobre los efectos personales no constituye un registro, soslaya nuestra Carta de Derechos y su reconocimiento expreso del derecho a la intimidad. Al proceder de esta manera, la mayoría esgrime una visión constitucional sumamente restrictiva que se abstrae de los hechos de este caso y que podría tener unas repercusiones nocivas para las libertades civiles en el país.
A continuación, examinamos con detenimiento la disyuntiva analítica que se deduce de la opinión del Tribunal. Enfatizamos nuestros puntos de coincidencia, así como nuestras serias discrepancias con la supuesta adopción de la factura mínima en este caso, a pesar de que la normativa expuesta en la mencionada jurisprudencia federal al amparo de la Cuarta Enmienda es de un alcance incongruente con el desarrollo del derecho de intimidad en nuestro ordenamiento constitucional.
h-l l—l
En primer lugar, es menester recordar que la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de la ciudadanía a la protección de su intimidad personal, así como la de sus casas, papeles y efectos personales contra registros, incautaciones y allanamientos *645 irrazonables. Art. II, Sec. 10, Const. E.L.A., supra. Así pues, hemos expresado que el objetivo de esta protección constitucional es impedir que el Estado interfiera con la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura imparcial del juez entre los funcionarios públicos y la ciudadanía para ofrecer una mayor garantía de razonabilidad a la intrusión. Pueblo v. Yip Berríos, 142 D.P.R. 386 (1997); Pueblo v. Martínez Torres, 120 D.P.R. 496, 500 (1988).
En ocasiones anteriores hemos afirmado que “ante toda controversia relacionada con esta protección constitucional, lo primero es determinar la existencia o no de un registro”. Pueblo v. Bonilla, 149 D.P.R. 318, 329 (1999). Véase Pueblo en interés menor N.O.R., 136 D.P.R. 949, 961 (1994). En algunas situaciones resulta complejo hacer tal determinación, pues la garantía constitucional protege a la persona como tal, y no a lugares o a cosas específicas. No obstante, la protección constitucional se puede extender a estos lugares y objetos en determinadas circunstancias por la expectativa razonable de intimidad que alberga cada individuo sobre ellos. Pueblo v. Soto Soto, 168 D.P.R. 46, 54-55 (2006); Pueblo v. Ortiz Rodríguez, 147 D.P.R. 433, 440 (1999).
Por otra parte, para que ocurra un registro en el sentido constitucional no tiene que haber una intervención física en un lugar u objeto particular. Al dilucidar si ha ocurrido un registro, lo importante es determinar si se ha infringido una expectativa de intimidad que la persona alberga subjetivamente y que la sociedad está preparada para reconocer como razonable. Pueblo v. Soto Soto, supra, pág. 55; Pueblo v. Bonilla, supra, pág. 330; Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991). Según esa misma óptica, se ha resuelto en reiteradas ocasiones que todo ciudadano guarda una expectativa razonable de intimidad sobre su equipaje y sus efectos personales, por lo que el examen de éstos constituye un registro en el sentido constitucional, aun bajo el crisol de la factura mínima federal. Arkansas v. *646 Sanders, 442 U.S. 753 (1979); United States v. Chadwick, 433 U.S. 1 (1977); Pueblo v. Bonilla, supra, pág. 329.(2)
En ese contexto, coincidimos con la mayoría al resolver que el allanamiento de la evidencia suprimida en el presente caso no cumplió con la excepción de un hallazgo a plena percepción invocada por el Procurador General para que validáramos el registro en controversia. La normativa constitucional puertorriqueña que reconoció esta excepción al requisito de una orden judicial previa fue enunciada por primera vez en Pueblo v. Dolce, 105 D.P.R. 422 (1976).
En esa ocasión, este Foro estableció cuatro criterios que deben considerarse para determinar si el objeto incautado sin una orden judicial se hallaba a plena vista previo al registro, a saber: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verla; (3) debe descubrirse el objeto inadvertidamente, y (4) la naturaleza delictiva del objeto debe surgir de la simple observación. Cuando median estas circunstancias, no procede la protección constitucional contra registros irrazonables, pues el interés investigativo prevalece sobre la expectativa de intimidad mínima que abriga un individuo con relación a un objeto a plena vista. Pueblo v. Dolce, supra.
Posteriormente, en Pueblo v. Acevedo Escobar, 112 D.P.R. 770, 779 (1982), afirmamos que la percepción del olfato guarda analogía y equivalencia funcional con las situaciones en las que se aplica la doctrina sobre prueba a plena vista, pues la única diferencia es el modo en que el objeto es detectado. En ese caso, se resolvió que aun si el consentimiento prestado por el acusado para el registro del baúl no se hubiera extendido al equipaje, hubiese subsistido la admisibilidad de la evidencia ocupada porque la *647 sustancia controlada fue percibida por el simple olfato del agente, lo que equivale a la percepción sensorial de la vista. íd. Véase, además, O.E. Resumil de Sanfilippo, Práctica jurídica de Puerto Rico: derecho procesal penal, Or-ford, Ed. Equity, 1990, T. I, pág. 271.
En este caso, los agentes del orden público no descubrieron la prueba inadvertidamente. La naturaleza delictiva de la evidencia incautada no era aparente de su faz, pues su existencia tampoco surgía de la simple percepción del olfato de los agentes. Más bien, éstos tuvieron que valerse del manejo de un can para hallar la cocaína supuestamente escondida en el equipaje de los acusados. Por ende, entendemos —al igual que la mayoría— que la excepción invocada por el Procurador General no aplica al caso de autos.(3)
En efecto, la utilización de un can para los propósitos investigativos de este caso constituyó una herramienta efectiva para detectar sustancias controladas. Esto es similar a la utilización de instrumentos tecnológicos para complementar los sentidos perceptivos de un agente del orden público. Por lo general, el uso de cualquier instrumento tecnológico sin una orden judicial en el contexto de una investigación es válido y no viola la prohibición de registros irrazonables, siempre y cuando se limite a acelerar el descubrimiento de evidencia que hubiese sido percibida eventual e inevitablemente por la plena percepción del ser humano. Véase, en general, 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment Secs. 2.2(f) y 2.2(g) (4ta ed. 2004).
Cónsono con lo anterior, en Kyllo v. United States, 533 U.S. 27 (2001), el Tribunal Supremo federal resolvió que el uso de un instrumento que detectaba el calor emitido por una residencia constituía un registro que requiere que se cumpla con todo el rigor de la Cuarta Enmienda. Por otra *648 parte, en Pueblo v. Soto Soto, supra, resolvimos recientemente que el uso de unos binoculares para observar el campo abierto frente a una residencia no constituía un registro irrazonable per se, pero aclaramos que “[dlistinto sería el caso si el propósito de utilizar el artefacto tecnológico fuera para observar aquello que no se podría ver sin una intrusión inconstitucional en la intimidad de la persona”. (Énfasis suplido.) Pueblo v. Soto Soto, supra, pág. 65 esc. 11.
En atención a ello, creemos que la utilización del examen de olfato de la unidad canina tampoco se puede amparar bajo la excepción que elaboramos recientemente en Pueblo v. Soto Soto, supra, en cuanto a los hallazgos a plena percepción mediante el uso de instrumentos tecnológicos en un campo abierto. La evidencia obtenida a raíz de la utilización del perro no hubiese sido percibida por el propio sentido del olfato ni de la vista del agente Rosado Cintrón. Es decir, no se trató de la utilización de un instrumento cuyo uso se limitaba a acelerar el descubrimiento de evidencia que hubiese sido percibida eventual e inevitablemente por la plena percepción del ser humano, sino para detectar aquello que no se podría percibir sin una intrusión física con la intimidad de la persona.
En otras palabras, y contrario a lo sugerido por la opinión del Tribunal, entendemos que el uso arbitrario de esta táctica investigativa se encuentra reñido con lo resuelto en Pueblo v. Soto Soto, supra. Ese caso realmente se refiere al uso de instrumentos tecnológicos bajo la excepción de hallazgo a plena percepción que la misma opinión del Tribunal reconoce que no aplica a este caso. Además, y como explicaremos más adelante, la utilización del examen de olfato canino sin control constitucional alguno tiene el potencial de proveer positivos falsos, por lo que su uso en esas circunstancias puede prestarse para la intromisión sin justificación previa con la intimidad y los efectos personales de cualquier individuo. Por lo tanto, al eximir de protección constitucional la utilización indiscriminada del *649 examen de olfato canino, como si se tratara de un supuesto análogo al uso de binoculares sobre un campo abierto, la mayoría confunde y trastoca el alcance de la referida jurisprudencia. Todo esto bajo el pretexto de un balance de intereses que favorece una noción generalizada y estereotipada sobre la lucha contra el crimen.(4)
Sin embargo, nuestra postura no significa que entendamos que el examen de olfato canino no deba ser un táctica investigativa legítima del Estado ni que se requiera obtener una orden judicial previa para todo caso en que ésta se fuera a utilizar. De igual forma, tampoco endosamos la teoría de que la utilización del examen de olfato canino deba limitarse a acelerar el descubrimiento de evidencia que hubiese sido percibida eventual e inevitablemente por la plena percepción del ser humano.
De hecho, creemos que el examen de olfato canino fue una intromisión gubernamental válida en el presente caso, precisamente por las mismas razones elaboradas en la Parte V de la opinión del Tribunal para sustentar la validez de la intervención con el equipaje de los acusados: que el agente del orden público logró articular una sospecha individualizada previa de que los acusados estaban involucrados en un esquema de contrabando de sustancias controladas, que una vez culminó el examen quedó corroborada.
*650 J—t H-I U-J
El estándar de sospecha razonable individualizada no es ajeno a nuestro ordenamiento jurídico. Ortiz v. D.T.O.P., 164 D.P.R. 361 (2005); Pueblo v. Yip Berríos, supra; Pueblo v. Malavé González, 120 D.P.R. 470 (1988). En particular, la sospecha individualizada se refiere a la expectativa de que un individuo está posiblemente involucrado en la comisión de un delito particular. Para determinar que la sospecha es razonable, se requiere un escrutinio mayor que una mera sospecha generalizada. Véanse: Reid v. Georgia, 448 U.S. 438 (1980); Brown v. Texas, 443 U.S. 47 (1979); C.H. Whitebread y C. Slobogin, Criminal Procedure: An Analysis of Cases and Concepts, 4ta ed., Nueva York, Ed. Foundation Press, 2003, Sec. 11.03, págs. 246-248.
Como reconoce la opinión del Tribunal, en el contexto de una intervención gubernamental relacionada con una investigación criminal, la sospecha individualizada razonable se debe equiparar a los motivos fundados para un arresto, que requiere la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En esencia, el funcionario del Estado que realiza la intervención debe tener motivos fundados suficientes para entender que el individuo intervenido ha cometido un delito en su presencia, más allá de una sospecha generalizada. Ello responde a la protección más amplia que provee nuestra Constitución al derecho de la intimidad. Véanse: Pueblo v. Bonilla, supra, pág. 337; Pueblo en interés menor N.O.R., supra; Pueblo v. Rivera Colón, supra.
En armonía con este precepto, se ha reconocido que, bajo ciertas circunstancias particulares de necesidad especial del Estado, se puede sostener la validez constitucional de un registro sin una orden judicial previa al amparo de una causa probable por sospecha individualizada. Por su parte, la razonabilidad de esta intervención se determina a base de un balance de intereses entre los derechos del individuo y el interés del Estado. Pacheco Pietri y otros v. *651 E.L.A. y otros, 133 D.P.R. 907 (1993).(5) Además, el propósito de una intromisión a la intimidad en tales circunstancias excepcionales debe estar estrechamente relacionado con la sospecha individualizada que invoca el agente del orden público para llevarla a cabo.(6)
En conformidad con lo anterior, creemos que al existir una sospecha individualizada y razonable de que un individuo esconde contrabando en su equipaje, no es necesario que los agentes del orden público obtengan una orden judicial previa para realizar un examen de olfato canino en un área en donde éstos ya tienen derecho a estar. En esos casos pueden concurrir las circunstancias especiales de necesidad del Estado que justifiquen la utilización de dicha técnica investigativa, la cual generalmente constituye una práctica policiaca menos intrusiva que otros registros y allanamientos. Véase LaFave, op. cit., pág. 540.
En este caso, entendemos que ese estándar debe aplicar tanto al examen de olfato canino como al registro posterior del equipaje en su fondo. Se deduce del expediente y de la opinión del Tribunal que el agente Rosado Cintrón había corroborado varias confidencias con su propia observación en el transcurso de una extensa investigación criminal que apuntaban razonablemente a que los acusados estaban involucrados en el trasiego y contrabando de drogas entre los municipios de Culebra y Fajardo. Dado que transcurrieron pocos minutos desde que se recibió la confidencia que posicionó a los acusados en el aeropuerto y los sucesos que culminaron en el registro, es evidente que el agente no *652 tuvo tiempo suficiente para obtener una orden judicial antes de llegar al aeropuerto.(7)
En atención a estas circunstancias excepcionales, la existencia de la mencionada sospecha razonable individualizada en el caso de autos justificó el uso del examen de olfato canino sin la necesidad de que mediara una orden judicial previa. De hecho, y a pesar de sus pronunciamientos innecesarios y contradictorios sobre la naturaleza de esta táctica investigativa, la sección dispositiva de la opinión del Tribunal coincide claramente con este criterio. En particular, la mayoría expresa con toda razón que “las circunstancias particulares de necesidad especial fueron ejemplificadas en la sospecha individualizada razonable que, anterior al examen del olfato canino, poseían los agentes del orden público y que quedó corroborada una vez se culminó el examen”. (Énfasis suplido.) Opinión del Tribunal, pág. 636. Además, la opinión sostiene precisamente que “la intervención del equipaje fue razonable al estar directamente relacionada con la previa sospecha individualizada ... de que su contenido tenía narcóticos”. (Énfasis suplido.) íd., pág. 637.
En esencia, coincidimos con la lógica de ese razonamiento, dado que la utilización per se del examen de olfato canino en este caso constituyó un registro basado en una sospecha individualizada previa. El Ministerio Público logró rebatir la presunción de la irrazonabilidad del registro en la vista de supresión de evidencia, pues el testimonio del agente Rosado Cintrón demostró que el propósito del examen de olfato canino en este caso se limitó a corroborar la mencionada confidencia. Además, tampoco se trató de una detención irrazonable en contravención a la factura *653 mínima establecida en Terry v. Ohio, 392 U.S. 1 (1968), pues toda la intervención en controversia ocurrió brevemente y medió la sospecha individualizada análoga a la Regla 11 de Procedimiento Criminal, supra, que requiere nuestro ordenamiento constitucional.
Por otro lado, y como acertadamente reconoce la opinión del Tribunal al discutir la doctrina de necesidad especial, debemos recordar que el hecho de que el can haya marcado positivo no es de por sí suficiente ni justifica automáticamente el registro en su fondo del equipaje sin una orden judicial previa, o sin que concurra alguna de las demás excepciones al registro sin una orden. Véanse: Opinión del Tribunal, pág. 633; Arkansas v. Sanders, supra; United States v. Chadwick, supra. En el supuesto de que concurran tales requisitos y las exigencias de las circunstancias particulares del caso justifiquen tal proceder, se podría prescindir del requisito de una orden judicial previa para realizar el registro en su fondo del equipaje en el cual se detectaron sustancias controladas mediante un examen de olfato canino.(8)
En otras palabras, aunque —mediante un dictum innecesario y confuso— la mayoría sugiere en su discusión anterior a la parte dispositiva del caso que en nuestra jurisdicción existe raía amplia autoridad legal para realizar un examen de olfato canino en ciertas circunstancias, sin sujeción a un estándar constitucional, de la misma opinión se deduce que para prescindir del requisito de una orden judicial para registrar el equipaje en su fondo, el Ministerio Público debe establecer, de entrada, la existencia de una sospecha razonable individualizada que constituya la causa probable requerida por el ordenamiento penal más allá de comprobar que el perro marcó positivo.
*654 En este caso estamos de acuerdo con la opinión del Tribunal en tanto concluye que la reacción del can al “marcar positivo”, tras olfatear los bultos arrojados en el suelo, configuró finalmente los motivos fundados necesarios para que se realizara el registro en su fondo del mencionado equipaje sin una orden judicial previa. En virtud de un segundo balance de intereses, entendemos que esa etapa del registro en controversia —la cual comenzó cuando se abrió el equipaje— se justificó luego de que el examen de olfato canino corroborara las mencionadas confidencias. Es decir, las exigencias de las circunstancias particulares de este caso y la existencia de causa probable de que el equipaje registrado contenía sustancias controladas permitieron que se prescindiera, como cuestión práctica, de una orden judicial en el supuesto de autos. Véase Pueblo v. Acevedo Escobar, supra.
En fin, en esta etapa entendemos que el examen de olfato canino y el registro del equipaje en el caso de autos fueron razonables porque el alcance de la intromisión a la intimidad que permitieron dichas tácticas se circunscribía específicamente a corroborar la causa probable basada en la sospecha individualizada que surgía de las numerosas confidencias que el agente Rosado Cintrón había recibido en el proceso investigativo relacionado con un esquema de contrabando de drogas.(9) Por lo tanto, coincidimos con la mayoría en tanto resuelve, al amparo de la doctrina de necesidad especial y de sospecha individualizada razonable, que procede revocar la sentencia recurrida del Tribunal de Apelaciones que había validado la supresión de evidencia en controversia.
*655 IV
Al aplicar dicha doctrina al presente caso, la mayoría reconoce que la intervención en controversia constituyó un registro, e implícitamente sugiere que el mero acto de so-meter el equipaje al olfato canino de Pirata requirió la prevalencia de una sospecha individualizada. Así pues, la contradicción fundamental que surge de la Parte IV de la opinión del Tribunal recae en su intento de dilucidar en qué momento exactamente comenzó el registro.
Sin embargo, no hay duda de que a la luz de los hechos de este caso y del análisis dispositivo que reseñamos en la sección previa, se hacía totalmente innecesario discutir cualquier asunto ulterior sobre la naturaleza de esta táctica investigativa. Sin embargo, en la discusión anterior a la Parte V, la mayoría indica de modo tajante que debemos circunscribir el análisis sobre esta intromisión gubernamental estrictamente a lo resuelto por la jurisprudencia federal sobre el particular. Esto sin tomar en consideración que el efecto práctico de la normativa anunciada sería inherentemente incompatible con el desarrollo del derecho de intimidad y la protección contra registros y allanamientos irrazonables en nuestro ordenamiento constitucional.
En específico, la mayoría sugiere que nos debemos ceñir a la factura mínima federal despuntada por un dictum en United States v. Place, 462 U.S. 696 (1983), y la jurisprudencia posterior del Tribunal Supremo de Estados Unidos relacionada con este asunto. De esa forma, la mayoría “in-corpora” a nuestra jurisdicción el precepto de que el examen de olfato canino, al tratarse de una técnica investigativa sui géneris, no es un registro a la luz de la Cuarta Enmienda de la Constitución federal.(10) En fin, la opinión del Tribunal en este caso elabora el raciocinio de que como *656 dicha táctica investigativa no se considera un registro en el ámbito federal, tampoco lo debe ser al amparo del Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, supra.
Nos sorprende el salto lógico de esa conclusión, pues además de ser innecesario para resolver el caso ante nosotros, pasa por alto que nuestra Carta de Derechos provee una protección más amplia al derecho a la intimidad que la Constitución de Estados Unidos. En efecto, la mayoría ignora la norma histórica de que el derecho constitucional federal reconoce un gran margen para que los tribunales supremos estatales interpreten las garantías de sus respectivas Constituciones con mayor amplitud y a la vanguardia de los preceptos enunciados en algunos de los dictámenes del Tribunal Supremo de Estados Unidos. Esa es la virtud del federalismo estadounidense tan preciado por sus ciudadanos. Véase Blassini et als. v. Depto. Rec. Naturales, 176 D.P.R. 454 (2009).(11)
De hecho, la filosofía de reduccionismo judicial adoptada por el Tribunal mediante dictum no toma en consideración la tradición histórica del federalismo y la interacción dinámica entre el constitucionalismo federal y estatal, la cual ha permitido que la democracia en Estados Unidos sobreviva y prospere por más de dos siglos. En muchas ocasiones, el derecho estatal ha pautado la visión constitucional de vanguardia que posteriormente acoge el Tribunal Supremo de Estados Unidos, como parte del common law federal. Véase W.J. Brennan, Jr., Some Judicial Aspects of Federalism, 52 (Núm. 1) Rev. Jur. U.P.R. 1, 7-9 (1983).(12)
*657 En lo pertinente al presente caso, la Cuarta Enmienda de la Constitución federal, según interpretada por el Tribunal Supremo de Estados Unidos, constituye tan sólo la protección mínima que Puerto Rico y los estados están obligados a reconocer en lo referente a la garantía contra registros y allanamientos irrazonables. En contraste con la Constitución federal, nuestra Carta de Derechos protege expresamente la honra, la reputación y la vida privada de las personas. Art. II, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1. Así, hemos reiterado que “[e]l efecto conjunto de esta cláusula y la garantía constitucional contra registros y allanamientos irrazonables ha sido establecer el derecho a la intimidad como uno de los de más alta jerarquía en nuestro ordenamiento”. Pueblo v. Bonilla, supra, pág. 329. Véase Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 64 (1986).(13)
Reconocemos que la factura más ancha de nuestra Carta de Derechos no se debe invocar livianamente. Sin embargo, y contrario a lo que sugiere la opinión mayoritaria, este Tribunal tiene el deber de utilizar una visión abarcadora y protectora cuando define los contornos de los derechos constitucionales de cada individuo, particularmente en lo que respecta a la intimidad y a los registros y allanamientos irrazonables. Esta realidad exige que atendamos con tesón cualquier supuesto en que una expectativa razonable de intimidad o los derechos humanos de la ciudadanía se encuentren amenazados.(14)
*658 V
Aclarado lo anterior, no tenemos duda de que lo resuelto por el Tribunal Supremo federal en Illinois v. Caballes, 543 U.S. 405 (2005), y United States v. Place, supra, en cuanto al examen de olfato canino, no es compatible con la primacía que históricamente se le ha reconocido al derecho a la intimidad en nuestro ordenamiento constitucional. Como indica la opinión del Tribunal al citar con aprobación varias decisiones de tribunales estatales y federales, esta jurisprudencia federal ha permitido validar “el examen de olfato canino de manera indiscriminada, tanto en los equipajes como en los automóviles”, a pesar de la expectativa razonable de intimidad que un individuo pueda ostentar sobre tales objetos. (Enfasis suplido.) Opinión del Tribunal, pág. 618.
En atención a lo anterior, varios de los tratadistas más eruditos del derecho procesal penal en Estados Unidos han sido contundentes al expresar su preocupación sobre el alcance de esta jurisprudencia federal. Por ejemplo, el distinguido profesor LaFave ha caracterizado la decisión de Illinois v. Caballes, supra, como un “oversimplified and underprotective no-search-ergo-no-scope violation rule”. LaFave, supra, Sec. 9.3(f), 2008-09 Pocket Part, pág. 73. Además, este tratadista ha criticado continuamente el “cheque en blanco” que concede la amplia normativa de United States v. Place, supra, particularmente porque se ha probado que estos perros entrenados no son infalibles, lo que significa que su uso podría resultar, potencialmente, en intromisiones indebidas con la intimidad de personas inocentes. LaFave, supra, Sec. 2.2(g), págs. 532-533.(15)
*659 Sin embargo, el raciocinio reduccionista de la mayoría parte de la premisa inarticulada —y desacreditada— de que el derecho de intimidad no está en juego en estos casos porque el examen de olfato canino se dirige únicamente a identificar si el equipaje de una persona contiene o no contrabando, y que un ciudadano no puede albergar expectativa de intimidad alguna sobre el contrabando de sustancias ilegales. Como mencionamos anteriormente, la realidad es que ese fundamento ignora por completo la ciencia y la evidencia estadística disponible sobre los exámenes de olfato canino, la cual apunta a que esta táctica investigativa dista de ser perfecta y su utilización tiende a resultar en “positivos falsos” en muchas ocasiones. LaFave, supra, Sec. 2.2(g), págs. 532-533.
En específico, se ha demostrado empíricamente que las unidades caninas no gozan de certeza ni precisión perfecta en su olfato al detectar sustancias controladas, y que cada perro posee un historial de capacidad y de habilidad diferentes.(16) Ciertamente, las inexactitudes latentes en los exámenes de olfato canino para detectar sustancias controladas pueden resultar en una intromisión indebida a la intimidad de los ciudadanos, particularmente cuando el perro provee positivos falsos en un porciento desmedido de sus intervenciones. Véanse: LaFave, supra, Secs. 2.2(e) y 2.2(g); id., Vol. 4, Sec. 9.3(f); R.E. Myers II, Detector dogs and probable cause, 14 Geo. Mason L. Rev. 1 (2006).
Por ejemplo, en Doe v. Renfrow, 475 F.Supp. 1012 (N.D. Ind. 1979), modificado en 631 F.2d 91 (7mo Cir. 1980), un examen de olfato canino realizado en una escuela “alertó” a la policía sobre la presencia de sustancias ilegales en el *660 cuerpo de una niña de 13 años. Luego de que la niña se vaciara los bolsillos, el perro continuó “marcando positivo”. En vista de ello, dos agentes del orden público la sujetaron a un registro al desnudo que no reveló la presencia de drogas. Eventualmente se demostró que el perro marcó positivo porque la niña había estado jugando con su perra, la cual se encontraba en celo.(17)
Del mismo modo, en U.S. v. $639,558.00 in United States Currency, 955 F.2d 712 (D.C. Cir. 1992), un examen de olfato canino marcó positivo a cocaína en la maleta de un pasajero, pero no se encontró ninguna sustancia controlada en ésta. Posteriormente, se concluyó que el perro marcó positivo porque en el dinero en efectivo del pasajero había rastros diminutos de cocaína. En vista de esto, la Corte de Apelaciones de Estados Unidos para el Circuito del Distrito de Columbia indicó que del 75 al 97 porciento del dinero en efectivo en circulación contiene suficiente remanente de cocaína para alertar a un perro entrenado. íd.(18)
Tales incidentes relacionados con la imperfección del examen de olfato canino ejemplifican que su uso tiene el potencial de exponer a todo ciudadano a intromisiones irrazonables y humillantes respecto a su intimidad. Por tanto, no nos podemos unir al criterio mayoritario que avala innecesariamente la utilización indiscriminada y sin control constitucional alguno de estos canes para detectar sustancias controladas.
Más aún, la utilización de estos perros en la proximidad inmediata de las personas tiene un carácter intimidante, por lo que es incuestionable que su uso tiene un efecto intrusivo que podría ser hasta degradante para cualquier *661 individuo. Por ello, el profesor LaFave también ha afirmado que su utilización puede ser ofensiva para algunos, y hasta “reminiscent of the ugliest types of scenes that have occurred in police states”. LaFave, supra, Vol. 4, Sec. 9.3(f), pág. 81.(19)
No hay duda, pues, de que la intromisión a la intimidad que permite la normativa establecida por estos casos en virtud de la Cuarta Enmienda excede las exigencias mínimas de ese derecho al amparo de nuestra Carta de Derechos. Al permitir el uso indiscriminado del examen de olfato canino para detectar contrabando en el equipaje —sobre el cual existe una expectativa razonable de intimidad— se permitiría la intervención con cualquier ciudadano sin una justificación previa, con el único propósito de sentar las bases para un arresto o un registro más minucioso sin una orden judicial y sin una sospecha razonable individualizada.
Evidentemente, esta actuación del Estado tiene todas las características de un registro, por lo que clasificarla de otra forma opera en clara contravención a un sinnúmero de precedentes de este Tribunal, mediante los cuales hemos ampliado el derecho a la protección de la intimidad de los puertorriqueños a pesar de que la factura mínima federal permitiría otro curso de acción. Véanse, por ejemplo: Pueblo v. Bonilla, supra; Pueblo v. Malavé González, supra; Pueblo v. Dolce, supra. Al amparo de tales casos, en nuestra jurisdicción se considera irrazonable el registro incidental a un arresto del interior de un vehículo o de una persona, salvo que se haga de manera superficial para hallar armas que pudieran ser alcanzadas por el arrestado o *662 para ocupar evidencia que de otra manera podría desaparecer. Por lo tanto, mucho más irrazonable sería establecer los motivos fundados para un arresto o registro sin una orden a base de un examen de olfato canino realizado de manera arbitraria, el cual se podría llevar a cabo bajo esa premisa contra cualquier peatón en un parque o en una calle pública sin probar sospecha individualizada o sin alguna justificación previa.
Según la factura más ancha que emana de nuestra Constitución, resulta inevitable concluir que el examen de olfato canino es un registro per se en el sentido constitucional, que es exactamente lo que sugiere la parte dispositiva de la opinión del Tribunal al atender los hechos de este caso. Por ello, no avalamos la posición asumida mediante dictum de que la utilización de esa herramienta investigativa sobre los efectos personales de un individuo no está sujeta a ninguna de las garantías constitucionales en protección del derecho de intimidad, precisamente porque dicha táctica expone a todo ciudadano a intromisiones indiscriminadas y arbitrarias que podrían dar base a un registro más profundo o hasta al arresto del individuo sin que medie una orden judicial previa.
Claro está, la mayoría hace la salvedad de que para detener a una persona con el propósito de someterla a un examen de olfato canino, sí hace falta probar una sospecha individualizada de que su equipaje contiene sustancias controladas. Dicha conclusión es forzosa, pues de lo contrario se violaría la factura mínima federal sobre el particular establecida en Terry v. Ohio, supra.(20)
De igual forma, la opinión mayoritaria infiere que se resguarda el derecho de intimidad en nuestro ordenamiento jurídico al ceñir la normativa de United States v. *663 Place, supra, al contexto del equipaje. Ante esa aclaración, la mayoría explica que lo resuelto en este caso no se ex-tiende hacia una persona, un grupo de personas o cuando dicho examen pueda ser objeto de vergüenza o cause algún inconveniente en el contexto de una investigación particular. Por último, también indica que hace falta una sospecha individualizada razonable, más allá de la marca positiva del can, para justificar el registro más profundo del equipaje. Véase Opinión del Tribunal, págs. 620 y 634-635.
Aún así, lo cierto es que la norma anunciada por el Tribunal hoy tendría el efecto cascada de exponer a cualquier peatón que no esté en movimiento en un área pública a que sus efectos personales sean olfateados por un perro grande e intimidante, cuya reacción —la cual se ha probado que puede ser científicamente imperfecta— podría acarrear consecuencias penales. A pesar de las salvaguardas anunciadas por la mayoría, el alcance de la normativa avalada fomenta que los ciudadanos le teman y hasta le huyan a la policía para evitar un malentendido desagradable en un pasadía en el parque, en la playa o en la plaza pública.
Como imperativo democrático en protección de la intimidad y los derechos civiles de nuestros ciudadanos, no debemos concederle un “cheque en blanco” al Estado para que se realicen estas intromisiones al azar y sin justificación previa alguna. Lamentablemente, el razonamiento autómata esbozado por la mayoría hoy para clasificar el examen de olfato canino como un “no registro” sienta las bases para justificar en el futuro otras intervenciones totalitarias ajenas a los principios fundamentales que emanan de nuestra Carta de Derechos.
Por otro lado, y aún bajo la óptica de que el examen de olfato canino constituye un registro, consideramos que su uso puede ser razonable y justificable en las circunstancias apropiadas, sin lacerar las garantías constitucionales de los individuos. De hecho, como hemos señalado, en este caso entendemos que el uso de esta táctica investigativa sin una orden judicial previa fue razonable, pues se arti *664 culo una sospecha individualizada en conformidad con nuestra Carta de Derechos.
En armonía con nuestro criterio, múltiples tribunales estatales han reconocido con posterioridad a United States v. Place, supra, que el examen de olfato canino constituye un registro en virtud de sus propias constituciones. En esencia, un número significativo de los máximos foros estatales ha rechazado el uso indiscriminado del examen de olfato canino y ha requerido que, para validarlo, se pruebe al menos una sospecha razonable individualizada de que la persona está involucrada en la comisión de un delito relacionado con el contrabando de sustancias controladas. Veamos.
VI
En Com. v. Johnston, 530 A.2d 74 (Pa. 1987), el Tribunal Supremo de Pennsylvania resolvió que, al amparo de la disposición constitucional de ese estado referente a la protección contra registros y allanamientos irrazonables, el examen de olfato canino es un registro en el sentido constitucional. Sin embargo, concluyó que la utilización de los perros en ese caso fue razonable porque se articuló una sospecha individualizada previa y porque la Policía probó que tenía derecho a estar en el lugar donde se realizó el registro.(21) El tribunal explicó que para justificar este tipo de intromisión gubernamental sin una orden judicial previa, se debe cumplir con un escrutinio dual de articular una sospecha individualizada razonable y de probar que los agentes del orden público se encontraban legalmente en el lugar donde se realizó el registro.(22)
*665 Por otro lado, en State v. Pellicci, 580 A.2d 710 (N.H. 1990), el Tribunal Supremo de New Hampshire llegó a una conclusión similar, por lo que validó la utilización de un examen de olfato canino para registrar el vehículo de un acusado en virtud de que existía una sospecha razonable de que éste transportaba sustancias controladas. Al concluir que el referido examen es un registro que se puede efectuar sin una orden judicial previa en determinadas circunstancias, dicho foro estatal aludió expresamente a la factura más ancha que imperaba en virtud de la Constitución de ese estado. Además, dado que el examen del olfato canino se prestaba para detectar lo que los agentes del orden público no podrían percibir con sus propios sentidos, concluyó que la adopción del estándar de sospecha razonable era un imperativo constitucional. Id.(23)
Asimismo, en People v. Dunn, 564 N.E.2d 1054 (N.Y. 1990), el máximo foro judicial del estado de Nueva York resolvió que aunque el examen de olfato canino no es un registro al amparo de la Cuarta Enmienda de la Constitución federal, sí lo es bajo la disposición análoga de la Constitución de ese estado. Al rechazar la adopción de la normativa de United States v. Place, supra, en el ordenamiento constitucional estatal, el tribunal concluyó que el hecho de que un procedimiento investigativo pueda revelar evidencia de algún material delictivo, es irrelevante al determinar qué constituye un registro. Por el contrario, sostuvo que el análisis se debe enfocar en si ha ocurrido alguna intromisión con alguna expectativa razonable de intimidad del individuo. Una vez se parte de esta premisa, es inevitable concluir que el examen de olfato canino es un registro *666 en el sentido constitucional. Dicha técnica investigativa permite a la policía obtener información sobre el contenido escondido en un lugar u objeto que goza de una expectativa razonable de intimidad por su relación con un individuo.
Al igual que las decisiones estatales antes reseñadas, el máximo foro de Nueva York adoptó el estándar de sospecha razonable individualizada. Según explicó ese tribunal, resolver lo contrario resultaría en aumentar el riesgo de que los agentes del orden público tengan la vía libre para correr con sus perros e intervenir de manera indiscriminada con los transeúntes y cualquier ciudadano en búsqueda de sustancias controladas. Para dicho foro, “[s]uch an Orwellian notion would be repugnant under our State Constitution”, pues ésta protege contra el abuso de discreción de los agentes del orden público al realizar registros y allanamientos. People v. Dunn, supra, pág. 1058. A esa misma conclusión han llegado las cortes supremas de muchos estados como —por ejemplo— Minnesota, Colorado, Connecticut y Alaska. Véanse, a modo comparativo: State v. Carter, 697 N.W. 2d 199 (Minn. 2005); People v. Haley, 41 P.3d 666 (Colo. 2001);(24) State v. Waz, 692 A.2d 1217(Conn. 1997); McGahan v. State, 807 P.2d 506, 510 (Alaska App. 1991).
Aunque es cierto que en estados como Idaho y Montana las cortes se han limitado a acoger la factura mínima establecida en United States v. Place, supra,(25) creemos que la jurisprudencia constitucional de estados como Nueva York, Pennsylvania, Connecticut, New Hampshire y Minnesota, con una visión más abarcadora y vanguardista en cuanto a la protección del derecho a la intimidad y las garantías *667 constitucionales contra registros irrazonables, es mucho más contundente y persuasiva en el contexto de nuestra jurisdicción. Al concluir que el examen de olfato canino es un registro sujeto al criterio de sospecha razonable individualizada, esa jurisprudencia es de mayor consonancia con el desarrollo de los derechos individuales al amparo de nuestra Carta de Derechos y de nuestra propia jurisprudencia relativa al derecho a la intimidad y a la protección contra registros irrazonables.
No encontramos razón alguna por la cual debamos considerar que nuestra propia Constitución, la cual reconoce expresa e independientemente el derecho a la intimidad, confiera menos salvaguardas y garantías constitucionales que esos estados en lo que respecta a la utilización indiscriminada, al azar y arbitraria del examen de olfato canino. Una intrusión gubernamental de esta naturaleza sin control constitucional alguno no sólo incumple con las excepciones al registro sin una orden judicial en nuestro ordenamiento, sino que cimienta las bases para mayores intromisiones gubernamentales a la intimidad, en contravención a los derechos fundamentales y democráticos de nuestros ciudadanos.
Por ende, y al igual que los foros estatales en las decisiones antes reseñadas, entendemos que tanto el derecho a la intimidad como la protección contra los registros irrazonables en nuestra jurisdicción, nos obligan a concluir que la utilización del examen de olfato canino constituye un registro en el sentido constitucional, sujeto al estándar de sospecha razonable individualizada. Este estándar es precisamente el que acoge la parte dispositiva de la opinión del Tribunal, por lo que no comprendemos ni se nos ha demostrado cómo la imposición de este criterio objetivo de razonabilidad para regular la intromisión gubernamental que conlleva el examen de olfato canino laceraría los intereses del Estado en la lucha contra el crimen, según sugiere de modo generalizado la Parte IV de la opinión del Tribunal. De hecho, el estándar de sospecha individualizada es tan pragmático que incluso exime a los agentes del *668 orden público del requisito de una orden judicial previa para realizar el registro. Lo único que ese estándar impone al Estado es la obligación de que no utilice esta herramienta de manera arbitraria e indiscriminada, como bien se podría hacer al ceñirnos exclusivamente a la factura mínima federal.(26)
VII
Por todo lo antes expuesto, creemos —en esta etapa procesal— que en el caso de autos el registro realizado sin una orden judicial previa fue razonable bajo el crisol de la Constitución del Estado Libre Asociado de Puerto Rico. Sin embargo, no podemos unirnos a la opinión del Tribunal, dado que ésta no toma en consideración que el manejador del can y el analista forense que preparó los Certificados de Análisis Químico Forense no estuvieron presentes ni disponibles para ser contrainterrogados en la vista de supresión de evidencia. Como consecuencia, la mayoría no aclara que, a pesar de que revocamos la supresión de la evidencia en esta etapa de los procedimientos, la admisibilidad eventual y final de esta prueba durante el juicio está totalmente sujeta a los parámetros de la Sexta Enmienda de la Constitución federal, según interpretados recientemente por el Tribunal Supremo de Estados Unidos en Meléndez-Díaz v. Massachusetts, supra.
En ese caso, el máximo foro federal resolvió que la admisión de un certificado de análisis químico forense, por *669 tratarse de prueba inherentemente testimonial, estuvo reñida con el derecho de confrontación al amparo de la Sexta Enmienda de la Constitución de Estados Unidos, ya que el Ministerio Público no presentó al perito que lo preparó como testigo de cargo.(27) Al hacer un análisis formalista de este derecho fundamental, el Tribunal Supremo federal pautó la normativa de que el Ministerio Público tiene la obligación de presentar como testigo al perito que preparó los referidos certificados, y que éste debe estar disponible para ser contrainterrogado por la defensa. Se trata de una aplicación sencilla del caso Crawford v. Washington, 541 U.S. 36 (2004), en el cual se resolvió que las declaraciones de índole testimonial ofrecidas contra un acusado son inadmisibles, salvo que el declarante se presente en el juicio o, si no está disponible, que el acusado haya tenido una oportunidad previa de contrainterrogarlo.
Así pues, Meléndez-Díaz v. Massachustts, supra, requiere el mismo rigor constitucional para admitir finalmente en el juicio la prueba científica presentada por el Ministerio Público, por lo que los peritos que manejan la tecnología investigativa utilizada para obtenerla deben es-tar sujetos a ser contrainterrogados, independientemente de la confiabilidad y precisión técnica que éstos puedan ostentar. Como dice el Juez Antonin Scalia en la referida opinión: “we would reach the same conclusion if all analysts always possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa.” Meléndez-Díaz v. Massachusetts, supra, pág. 2537 esc. 6.
Dado que la opinión del Tribunal en este caso trata a los perros como un instrumento tecnológico análogo al “Breathalyzer” o a un análisis químico de drogas, entendemos que como condición absoluta a la determinación de admi *670 sibilidad que hace el Tribunal hoy, el Ministerio Público tendrá que presentar como testigo de cargo al agente Marín, manejador del can que realizó el examen de olfato en controversia. El derecho de confrontación de los acusados respecto al manejador del can se toma más apremiante al tomar en consideración que estos perros no son infalibles ni operan sin margen de error, lo que en ciertas circunstancias podría arrojar dudas sobre la razonabilidad de su utilización.
Por consiguiente, al devolver el caso instruiríamos al Tribunal de Primera Instancia en cuanto a que Díaz Medina y Bonano Pérez tienen el derecho fundamental de confrontar al manejador y a contrainterrogarlo sobre la confiabilidad del historial de precisión de la unidad canina particular que realizó el examen de olfato en controversia. En otras palabras, en el contexto de una intervención tecnológica de esta naturaleza, el Ministerio Público debe presentar evidencia suficiente del historial de entrenamiento y certeza de la unidad canina que realizó el examen. Además, dado que las declaraciones recogidas en los Certificados de Análisis Químico Forense, presentados por el Ministerio Público en la vista de supresión de evidencia, constituyen prueba testimonial, sujetaríamos su admisión final a que el perito que los preparó se presente como testigo de cargo en el juicio.
Por lo tanto, resolveríamos que, de no testificar en el juicio el manejador del can ni el analista forense que preparó los certificados, la referida prueba debe ser suprimida. Dichas condiciones son necesarias, no sólo para salvaguardar el derecho de confrontación de los acusados, sino para probar que no se violentó la protección constitucional contra registros y allanamientos irrazonables que consagra nuestra Carta de Derechos.
A pesar de que en esta etapa el Tribunal resuelve que el registro en controversia fue razonable, adviértase que a través de todo el proceso penal el Estado tiene el peso de probar la razonabilidad del registro y la confiabilidad del *671 examen de olfato canino en controversia.(28) Según hemos resuelto, la resolución negativa o positiva de una moción de supresión no pone fin a la cuestión sobre la admisibilidad o el valor probatorio de la evidencia impugnada. Véase Pueblo v. Hernández Flores, 113 D.P.R. 511 (1982).(29) Como al devolver el caso, el Tribunal no condiciona la admisibilidad final de la evidencia en controversia al rigor constitucional antes enunciado, disentimos.
Por último, discrepamos enérgicamente de la normativa expresada por el Tribunal mediante dictum en cuanto a que la utilización de un examen de olfato canino no es un registro en el sentido constitucional. Hace apenas unos días, en Blassini, et als. v. Depto. Rec. Naturales, supra, este Foro invalidó un registro realizado sin una orden judicial en una propiedad privada, precisamente al amparo de la amplitud del derecho de intimidad que históricamente se ha reconocido en nuestro ordenamiento jurídico. No comprendemos cómo este mismo Tribunal ahora se niega a reconocer esa misma garantía constitucional a un ciudadano frente a una unidad canina, exponiéndolo a una intromisión gubernamental humillante y potencialmente errónea sin necesidad de que exista una sospecha individualizada previa. Parecería que un cazador de tórtolas en *672 una finca rural a campo abierto goza de mayor protección constitucional contra intrusiones arbitrarias del Estado que un individuo que reposa en la playa o en la plaza pública. Véase Blassini et als. v. Depto. Rec. Naturales, supra.
Como se sabe, nuestra Constitución se redactó precisamente en momentos cuando, como señala Trías Monge, “se sentían los primeros ramalazos del macartismo ...”. J. Trías Monge, Historia Constitucional de Puerto Rico, San Juan, Ed. U.P.R., 1982, Vol. III, pág. 192. En atención a esa realidad fáctica, el derecho a la intimidad está consagrado expresamente en nuestra Constitución, no por mera voluntad o capricho del Comité de Redacción, Estilo y Enrolado de la Convención Constituyente, sino por el mandato democrático del propio pueblo puertorriqueño.
Lamentablemente, la opinión del Tribunal en este caso representa un retroceso histórico en el desarrollo de vanguardia del derecho de intimidad en nuestra jurisdicción, pues invoca un raciocinio que nos recuerda las distopías ficticias de George Orwell y la represión policiaca de los regímenes totalitarios de la historia moderna. Es por ello que no podemos unirnos al intento mayoritario de reducir los derechos civiles y fundamentales de nuestro pueblo que se resguardan en los principios universales y los derechos democráticos de la mayor jerarquía.
Por todo lo anterior, disentimos respetuosamente del proceder del Tribunal en el caso de autos.

 Surge del expediente que el foro de instancia, en conformidad con la Regla 9(A) de Evidencia, 32 L.P.R.A. Ap. IV, sólo admitió la prueba de referencia con relación al manejo del can para los propósitos de determinar los hechos que motivaron al agente Rosado Cintrón a realizar el registro, mas no así como prueba sustantiva para el juicio en su fondo.

 Véanse, a modo ilustrativo: C.H. Whitebread y C. Slobogin, Criminal Procedure: An Analysis of Cases and Concepts, 4ta ed., Nueva York, Ed. Foundation Press, 2003, Sec. 4.3, págs. 118-121; E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, T. I, Vol. I, págs. 282-285.

 Según esta misma premisa, el profesor Wayne R. LaFave ha expresado: “ ‘[the] application of a “plain smell” doctrine to dog searches stretches the imagination.’ ” 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 2.2(g), pág. 528 (4ta ed. 2004).

 La mayoría también enfatiza que en Kyllo v. United States, 533 U.S. 27 (2001), fue determinante que el thermal imager no era fácilmente accesible y disponible al público, y contrasta esto con la gran accesibilidad de los perros para el público en general. Del mismo modo, en Pueblo v. Soto Soto, 168 D.P.R. 46 (2006), el Tribunal también enfatizó que los binoculares son aditamentos fácilmente accesibles y disponibles al público en general. No obstante, la realidad es que estos perros son incluso menos accesibles que la herramienta tecnológica utilizada en Kyllo. El costo aproximado para adquirir y entrenar un can para fines de detección de sustancias ilegales es de $20,000 a $29,000, mientras que el Agema Thermovision 210 utilizado en Kyllo y otros productos similares se pueden obtener por una cantidad mucho menor que las referidas unidades caninas. Véanse: K-9s—The cost of starting a K-9 unit, en Police Magazine, 21 de enero de 2004; http://www.opticsplanet.net/heatseekers-termal-imagers.html.

 Véanse, además: Arizona v. Johnson, 129 S.Ct. 781 (2009); Indianapolis v. Edmond, 531 U.S. 32 (2000); Treasury Employees v. Von Raab, 489 U.S. 656 (1989); Skinner v. Railway Labor Executives’ Assn., 489 U.S. 602 (1989); J.J. Alvarez González, Análisis del término 1998-99: derecho constitucional, 69 (Núm. 2) Rev. Jur. U.P.R. 419, 423-430 (2000).

 En ese sentido, conviene señalar que en Indianapolis v. Edmond, supra, el Tribunal Supremo federal invalidó unos bloqueos en las carreteras dado que el propósito de los éstos era encontrar drogas mediante el examen de olfato canino en los vehículos detenidos. El Tribunal reiteró la normativa de que un registro es ordinariamente irrazonable en ausencia de una sospecha individualizada. Además, afirmó que los registros sin una sospecha individualizada sólo se permiten cuando existe una necesidad especial más allá de la noción generalizada de la lucha contra el crimen.

 A modo ilustrativo, nótese que en este caso también concurrieron varias de las circunstancias requeridas para establecer los motivos fundados necesarios y realizar un arresto bajo la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, a base de la confiabilidad de una confidencia. La confidencia condujo hacia los acusados en términos de lugar y tiempo, fue corroborada por observaciones del propio agente y la corroboración se relacionaba con los actos delictivos cometidos y en proceso de cometerse. Véanse: Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977); Pueblo v. Acevedo Escobar, 112 D.P.R. 770 (1982).

 Específicamente, un registro de esa naturaleza se justifica de manera excepcional: (1) si a la luz de la totalidad de las circunstancias del caso existen motivos fundados suficientes para creer que el equipaje contiene material delictivo, y (2) si las exigencias de las circunstancias particulares del caso ameritan tal proceder. Véanse, en ese contexto particular: United States v. Sokolow, 490 U.S. 1 (1989); United States v. Ross, 456 U.S. 798 (1982).

 Tales hechos guardan cierta analogía con los sucesos de Pueblo v. Acevedo Escobar, supra, con la única excepción de que en el caso de autos fue el examen de olfato canino, y no la plena percepción de los agentes, el factor que finalmente corroboró las confidencias que configuraron los motivos fundados suficientes para realizar los arrestos y el registro más profundo del equipaje. En ambos casos, los agentes poseían las confidencias corroboradas que dieron lugar a la sospecha razonable individualizada para justificar la detención inicial de los acusados y la detección subsiguiente de las sustancias controladas.

 Del mismo modo, y a pesar de que no guarda relación alguna con este caso, la mayoría cita con beneplácito la opinión del máximo foro federal en Illinois v. Caballes, 543 U.S. 405 (2005), mediante la cual se resolvió que someter el exterior del vehículo al olfato canino luego de una detención vehicular rutinaria no viola la Cuarta Enmienda.

 Véanse, además: Rullán v. Fas Alzamora, 166 D.P.R. 742, 771 (2006); Pacheco Pietri y otros v. E.L.A. y otros, 133 D.P.R. 907 (1993); Pueblo v. Rivera Colón, 128 D.P.R. 672 (1991); López Vives v. Policía de P.R., 118 D.P.R. 219, 226 (1987); Pueblo v. Dolce, 105 D.P.R. 422 (1976); E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 (Núm. 1) Rev. Jur. U.P.R. 83 (1996).

 Por ejemplo, en Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261 (1990), el Tribunal Supremo de Estados Unidos acogió la normativa del máximo foro estatal de New Jersey en Matter of Quinlan, 355 A.2d 647 (1976), sobre el derecho a rechazar un tratamiento médico. Por otro lado, en Kennedy v. Louisiana, 128 S.Ct. 2641 (2008), el Tribunal Supremo federal aplicó el escrutinio del “consenso nacional” *657 del derecho estatal para declarar inconstitucional la pena de muerte en ciertas instancias.

 La Comisión sobre la Carta de Derechos de la Convención Constituyente enfatizó la importancia y amplitud de dicha disposición constitucional, al señalar lo siguiente:
“Se trata de la inviolabilidad personal en su forma más completa y amplia. El honor y la intimidad son valores del individuo gue merecen protección cabal ... contra inferencias abusivas de las autoridades.” (Enfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2566 (1951).

 Véanse, por ejemplo, RDT Const. Corp. v. Contralor, 141 D.P.R. 861 (1996); P.R. Tel. Co. v. Martínez, 114 D.P.R. 328 (1983).

 Es por ello que el ex Juez Asociado del Tribunal Supremo federal, David Souter, expresó en su disenso en Illinois v. Caballes, supra, págs. 412-413, que
“[o]nce the dog’s fallibility is recognized, however, that ends the justification claimed in Place for treating the sniff as sui generis under the Fourth Amendment: the sniff alert does not necessarily signal hidden contraband, and opening the container or enclosed space whose emanations the dog has sensed will not necessarily reveal contraband or any other evidence of crime.” Véanse, además: I. Bennett Capers, Policing, Race and Place, 44 (Núm. 1) Harv. C.R.-C.L. L.Rev. 43, 64 (2009); C. J. *659 Hunt, II, Calling in the Dogs: Suspicionless Sniff Searches and Reasonable Expectations of Privacy, 56 (Núm. 2) Case W. Res. L.Rev. 285 (2005).

 Véanse, por ejemplo: U.S. v. Kennedy, 131 F.3d 1371, 1378 (10mo Cir. 1997); U.S. v. Scarborough, 128 F.3d 1373, 1378 esc. 3 (10mo Cir. 1997); U.S. v. Limares, 269 F.3d 794, 797 (7mo Cir. 2001); Laime v. State, 60 S.W.3d 464, 476 (Ark. 2001); United States v. $242,484.00, 351 F.3d 499, 511 (11mo Cir. 2003); R. v. Kang-Brown, 2008 SCC 18, [2008] 1 S.C.R. 456; R. v. A.M., 2008 SCC 19, [2008] 1 S.C.R. 569. Véase, además, K. Garner et al., Duty Cycle of the Detector Dog: A Baseline Study 12 (Apr. 2001).

 Además, en ese caso varios exámenes de olfato canino realizados en la escuela “alertaron” a la policía sobre la presencia de drogas en el cuerpo de otros 50 jóvenes. Sin embargo, sólo 15 resultaron tener sustancias controladas consigo, por lo que los 35 restantes fueron “positivos falsos”. Doe v. Renfrow, 475 F.Supp. 1012 (N.D. Ind. 1979), modificado en 631 F.2d 91 (7mo Cir. 1980).

 De hecho, un estudio reciente de la Sociedad Química Americana reveló que el 90 porciento de los billetes de Estados Unidos contiene rastros de cocaína. Dinero con cocaína, en El Nuevo Día, 17 de agosto de 2009, pág. 34.

 En United States v. Place, 462 U.S. 696 (1983), la mayoría del Tribunal Supremo federal enfatizó que el examen de olfato canino en ese caso no conllevó ningún tipo de humillación o vergüenza porque no se hizo en un espacio público. Es decir, el grado de intrusión en la expectativa de intimidad al utilizar un examen de olfato canino, y su clasificación como registro per se, depende de las circunstancias particulares de cada caso. Sin embargo, y como bien ilustra la opinión del Tribunal, esta factura mínima federal se ha interpretado para permitir, a modo de excepción, un sinnúmero de intervenciones policiacas sin una orden judicial que de otra forma estarían reñidas con la Constitución.

 Adviértase, además, que en United States v. Place, supra, se resolvió que es irrazonable una detención extensa del equipaje para someterlo a dicha prueba en virtud de Terry v. Ohio, 392 U.S. 1 (1968), por lo que todos sus pronunciamientos sobre el olfato canino constituyeron dicta. El máximo foro federal aclaró que la detención sería razonable sólo si es breve y si existe una sospecha razonable de que el pasajero lleva sustancias controladas en el equipaje detenido. Véase United States v. Place, supra, opiniones concurrentes de los Jueces Brennan y Blackmun.

 Para llegar a esta conclusión, el Tribunal Supremo de ese estado adoptó la posición del Juez Brennan en su opinión concurrente de United States v. Place, supra, en cuanto a que el uso indiscriminado de los perros permitiría lo que incluso Terry v. Ohio, supra, no permite: el registro y allanamiento de propiedad al azar y sin sospecha individualizada alguna.

 Al adoptar este estándar, el Tribunal Supremo de Pennsylvania explicó lo siguiente: “it is our view that a free society will not remain free if police may use this, or any other crime detection device, at random and without reason.” Com. v. Johns *665 ton, 530 A.2d 74, 79 (Pa. 1987).

 La opinión del Tribunal hace referencia a Doran v. Contoocook Valley School Dist., 616 F.Supp.2d 184 (D. N.H. 2009) (no publicada). En dicha sentencia, la corte federal para el distrito de New Hampshire resolvió sencillamente que la utilización del examen de olfato canino en una escuela no constituye un registro bajo la Cuarta Enmienda y la jurisprudencia federal correspondiente. La mayoría no menciona, sin embargo, que la corte de distrito devolvió el caso al tribunal estatal para que se dilucidara la causa de acción bajo el derecho constitucional del estado de New Hampshire.

 Nótese que aunque en la opinión del Tribunal se cita con aprobación lo resuelto por el Tribunal Supremo de Colorado en People v. Wieser, 796 P.2d 982 (Colo. 1990), ese mismo foro adoptó precisamente el estándar de sospecha razonable individualizada, por lo que ha resuelto en múltiples ocasiones que la utilización del examen de olfato canino constituye un registro bajo la Constitución de Colorado. People v. Haley, 41 P.3d 666 (Colo. 2001); People v. Boylan, 854 P.2d 807 (Colo. 1993); People v. Unruh, 713 P.2d 370 (Colo. 1986).

 Véanse: State v. Scheetz, 950 P.2d 722 (Mont. 1997); State v. Martinez, 925 P.2d 1125 (Idaho 1996).

 por 0(;r0 lado, en caso de un registro de fronteras o de un examen de olfato canino dirigido a la detección de explosivos, imperan otras consideraciones. Por ejemplo, en los supuestos en que exista un interés inmediato de seguridad pública relacionado al tráfico aéreo, se puede prescindir del requisito de una orden judicial para realizar un registro rutinario del equipaje en un aeropuerto sin sospecha individualizada alguna. Sin embargo, dicha excepción no aplica cuando lo que se intenta pro-mover es un interés generalizado de combatir la introducción de contrabando o de artículos sin pagar arbitrios. Ello sólo lo podría realizar el Gobierno federal en las fronteras internacionales. Véanse: Torres v. Puerto Rico, 442 U.S. 465, 474-75 (1979); U.S. v. $124,570 U.S. Currency, 873 F.2d 1240 (9no Cir. 1989). Véase, además, a modo ilustrativo, nuestra opinión de conformidad en Pueblo v. Cedeño Laclaustra, 157 D.P.R. 743 (2002).

 Dicha cláusula dispone: “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” Enmda. VI, Const. EE.UU., U.S.C.A., ed. 2005, pág. 35. Ese mismo derecho está consagrado en el Art. II, Sec. 11 de nuestra Constitución, al disponer que “[e]n todos los procesos criminales, el acusado disfrutará del derecho ... a carearse con los testigos de cargo...”. Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 343.

 Ciertamente, el Ministerio Público logró rebatir la presunción de irrazonabilidad del registro sin una orden judicial en la vista de supresión de evidencia. Nótese que la vista de supresión al amparo de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, no equivale a un juicio en su fondo. Además, la utilización de la referida herramienta procesal en este caso se dirigió principalmente “ ‘a asuntos de derecho que hay que dirimir como paso previo a la admisibilidad de evidencia’ ”. Pueblo v. Blase Vázquez, 148 D.P.R. 618, 633 (1999). Véanse: Pueblo v. Martínez Torres, 126 D.P.R. 561, 575 (1990); Pueblo v. Rivera Rivera, 117 D.P.R. 283 (1986). En específico, atendimos en esta etapa la controversia de derecho sobre la razonabilidad de utilizar un examen de olfato canino a la luz de una sospecha individualizada previa de que el equipaje de los acusados contenía sustancias controladas.

 Al respecto, la profesora Resumil indica que al tratarse de la resolución de una cuestión interlocutoria que incide sobre derechos constitucionales, se permite volver a plantear la razonabilidad del registro “cuando nuevos hechos o nueva luz sobre la credibilidad de los testigos de cargo u otras materias que suijan en el juicio puedan arrojar dudas sobre la resolución anterior”. O.E. Resumil, Práctica jurídica de Puerto Rico: derecho procesal penal, Orford, Ed. Equity, 1990, T. I, pág. 323. Véanse, además: E.L. Chiesa, Tratado de Derecho Probatorio, República Dominicana, Ed. Corripio, 1998, págs. 1217-1218; Chiesa, Derecho Procesal Penal, op. cit., pág. 221.