**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Andrew L. WILLIAMS a/k/a L. Reed, Defendant-Appellant.**

No. 82–1557.

United States Court of Appeals, Tenth Circuit.

Feb. 6, 1984.

Rehearing Denied March 9, 1984.

Kathy P. Bonham of Bonham & Peake, Denver, Colo., for defendant-appellant.

Keith Ward, Asst. U.S. Atty., Tulsa, Okl. (Frank Keating, U.S. Atty., Tulsa, Okl., on the brief), for plaintiff-appellee.

Before McWILLIAMS and LOGAN, Circuit Judges, and CHILSON, Senior District Judge.*

LOGAN, Circuit Judge.

Defendant Andrew L. Williams appeals his conviction for possession of liquid phencyclidine (PCP), a controlled substance, with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1).

On appeal Williams asserts nine grounds for reversal. Seven relate to his contention that his initial detention and subsequent arrest were unlawful and that the evidence seized as a result should have been suppressed. He also alleges prosecutorial misconduct and asserts that he was denied a fair trial because all members of the jury that convicted him were white.

On November 20, 1981, defendant approached the American Airlines ticket counter in Los Angeles, California, and paid cash for a one-way ticket to Tulsa, Oklahoma. He checked one bag and received a ticket, boarding pass, and baggage claim check from the ticket agent, Nancy Gossett. Just before defendant stepped up to the counter, Gossett had observed defendant and another black male, Charles Wilson, waiting in the ticket line having an animated conversation. Defendant purchased his ticket with cash. Wilson stepped up next and also purchased with cash a one-way ticket to Tulsa and checked a single suitcase. When Gossett asked Wilson if he wanted to sit next to defendant, Wilson stated that they did not know one another and did not care to sit together. Believing that Wilson and defendant matched an American Airlines security profile, Gossett notified police at the Los Angeles airport of the suspicious behavior. She gave the police a description

of the two men along with their baggage claim numbers. The Los Angeles police notified the Tulsa police that two men would be arriving who matched a drug courier profile.

An officer from the Tulsa Police Department made arrangements with American Airlines to hold the luggage from defendant's flight briefly so that a trained narcotics dog, Sam, could sniff it. The police placed the bags of defendant and Wilson in a lineup with eight other suitcases. The dog sniffed the luggage and detected the odor of narcotics in defendant's suitcase and in Wilson's suitcase.

While the dog sniffed the suitcases, other officers watched defendant and Wilson deplane. After Wilson claimed his baggage, police officers escorted him from the baggage area. Wilson was subsequently released when police officers found no narcotics in his luggage. After stepping off the plane defendant made a phone call. He then approached the conveyor belt that the baggage checked to him was on, but after he saw Wilson escorted from the area, defendant sat down in a waiting area with other passengers. Officers approached defendant and asked to see his plane ticket, which he produced. It bore the name "L. Reed." The officers then asked to see his driver's license, which had been issued to "Andrew Williams." An officer requested that defendant accompany him to the security office, while another officer picked up the suitcase checked to defendant. Defendant denied that he owned the luggage even though the baggage claim check attached to his plane ticket matched the claim check on the luggage and the description provided by the Los Angeles police. At the security office defendant was searched. Officers found in defendant's billfold a cigarette they thought contained marijuana but which actually contained only tobacco. Defendant also possessed a set of keys that fit Wilson's luggage. The police got a warrant

* Honorable Hatfield Chilson, Senior United States District Judge for the District of Colorado, sitting by designation.

to search defendant's suitcase. The search revealed that the suitcase contained twenty-four ounces of liquid phencyclidine (PCP).

I

Defendant's first seven grounds for relief relate to whether his behavior matched the "drug courier profile," whether the police were warranted in stopping him for questioning, and whether under the circumstances the alert on his baggage by the drug sniffing dog constituted probable cause for his arrest and the search of his suitcase. These seven contentions are that (1) the American Airlines ticket agent lacked training in the drug courier profile; (2) matching the drug courier profile alone does not establish probable cause for a search and seizure; (3) defendant's behavior did not meet the DEA drug courier profile; (4) the search of defendant's wallet was illegal; (5) the alert of the drug sniffing dog to defendant's suitcase did not provide probable cause to arrest defendant; (6) the trial court erred in denying his motion for acquittal; and (7) the verdict was contrary to the evidence. All of these arguments are without merit.

█ Defendant's argument that probable cause for his arrest did not exist because the ticket agent lacked training in the drug courier profile fails because defendant ignores that a drug sniffing dog's detection of contraband in luggage "itself establish[es] probable cause, enough for the arrest, more than enough for the stop." *United States v. Waltzer,* 682 F.2d 370, 372 (2d Cir.1982) (citations omitted), *cert. denied,* —— U.S. ——, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). Thus, if the use of the drug sniffing dog was proper, the dog's detection of drugs in defendant's suitcase constituted probable cause. Defendant contends that police must have a reasonable suspicion before employing a narcotics dog to sniff luggage. *See United States v. Beale,* 731 F.2d 590, 34 Crim.L.Rep. (BNA) 2125 (9th Cir. 1983). We need not decide this issue, because we hold that a reasonable suspicion did exist in this case. *See United States v.*

*Place,* —— U.S. ——, ——, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983); *United States v. MacDonald,* 670 F.2d 910, 914 (10th Cir.1982). The ticket agent reported to the Los Angeles police that the defendant appeared nervous, purchased a one-way ticket with cash, denied knowing an individual with whom seconds before he had engaged in conversation, and flew from a drug source city. The Los Angeles police recognized that this behavior matched certain elements of the drug courier profile. Further, the ticket agent had given reliable information in the past in approximately twenty cases.

In *United States v. Bronstein,* 521 F.2d 459 (2d Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976), the Court held a search and seizure lawful on facts similar to those of the case at bar. In *Bronstein,* two men approached the American Airlines ticket counter in San Diego and purchased one-way tickets to Windsor, Connecticut. After purchasing their tickets the men talked like old friends, but when they presented themselves to the ticket agents they acted like strangers. The agents became suspicious and contacted the Drug Enforcement Administration (DEA). The DEA notified its Hartford, Connecticut, office that the two men fit a drug courier profile. A drug sniffing dog smelled narcotics in the suspects' luggage. After picking up their bags, officers stopped the men, asked them for identification, and took them to the security area at the airport. After obtaining a search warrant, police opened the bags and found that they contained illegal drugs. The court sanctioned the behavior of the law enforcement officials:

"In view of the tip received from the airline-employee informants *previously found to be reliable* by the West Coast DEA agent, who in turn alerted the Connecticut officers here, there was ample cause for the agents to pursue the lead and to place under surveillance the fully described passengers and their luggage."

*Id.* at 461 (emphasis added).

█ The defendant argues that because the drug sniffing dog's "alert" behavior was

questionable, the alert did not provide a sufficient justification apart from the drug courier profile to permit a lawful search and arrest. The classic alert behavior of a dog is to circle the suitcase, show interest, and scratch and bite the suitcase. In this case, however, Sam, a dog ranked number one in his class in all categories at his graduation from the United States Customs School, showed interest in defendant's and Wilson's suitcases and then bit the tags off both suitcases. Based on the trial record, we have no problem characterizing Sam's behavior as a valid alert. The officer who works with Sam testified that after ignoring the first five suitcases in the lineup, Sam stopped and circled defendant's suitcase and showed interest by running his nose around the seam and joints to get a better odor. Further, after the anomalous behavior of biting the tag off, Sam scratched and bit at the suitcase.

█ Defendant argues that his conviction should be reversed because the police illegally searched his wallet. Even assuming that the search of the wallet was illegal, defendant was not prejudiced, because the cigarette taken from the wallet did not form the basis of any subsequent criminal prosecution. Thus, any illegality is irrelevant to the case at bar.

The defendant's arguments that the verdict was contrary to the weight of the evidence and that the trial court erred in denying his motion for acquittal are without merit. Defendant basically contends that because the government erroneously charged defendant with possession of marijuana and because the government obtained its search warrant in part on the basis of the alleged marijuana and in part on the basis of the dubious hit by the drug sniffing dog, all evidence subsequently seized is inadmissible. The argument overlooks the fact that the seizure, detention, and arrest occurred *prior* to the discovery of the cigarette. The report issued by the Los Angeles police in reliance on information received from the ticket agent provided any suspicion necessary to warrant the use of the narcotics dog. This information, along with the alert by the dog, sufficed to justify the opening of the suitcase and the arrest and ultimate conviction of the defendant.

## II

█ Defendant asserts that the trial court erred in refusing defendant a new trial for prosecutorial misconduct. The alleged misconduct was the prosecutor's repeated characterization of the defendant as a "drug smuggler." Defendant contends that this characterization was not fair comment based on the evidence and was calculated to prejudice and inflame the jury. Based on the evidence presented at trial the references were accurate. The prosecutor's statements did not deprive defendant of a fair trial.

## III

█ Finally, defendant asserts that he was denied a fair trial because all jury members were white. However, he does not present any evidence that the government exercised any of its peremptory challenges to exclude persons from the jury because of their race. In fact, defendant used three of his eleven challenges to exclude blacks from the jury. He was not denied a fair trial because of the racial composition of the jury. *See Swain v. Alabama,* 380 U.S. 202, 221–22, 85 S.Ct. 824, 836–37, 13 L.Ed.2d 759 (1965).

AFFIRMED.