**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 28 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

DONALD C. SCARBOROUGH,

  Defendant - Appellant.

No. 96-1400

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 96-CR-31-M)**

---

Richard Kent Kornfeld (Gary Lozow with him on the briefs), Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, Colorado, for the Defendant - Appellant.

James C. Murphy, Assistant U.S. Attorney (Henry L. Solano, United States Attorney, with him on the brief), Denver, Colorado, for the Plaintiff - Appellee.

---

Before **EBEL**, **KELLY** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

  Appellant Donald Scarborough ("Scarborough") was convicted of

knowingly possessing with the intent to distribute 500 grams or more of cocaine.

He appeals the jury decision on the following grounds of alleged error by the trial court: (1) the denial of his motion to dismiss on the basis of the government's untimely disclosure of exculpatory information; (2) the refusal to give a proposed jury instruction; (3) the denial of his motion to suppress based on the asserted lack of reliability of the narcotics canine; (4) the admission of allegedly prejudicial evidence; and (5) the preclusion of certain testimony. We find no reversible error.

<h1 align="center">I</h1>

The government maintained at trial that on June 16, 1994, the defendant mailed or caused to be mailed from Denver, Colorado, an Express Mail package containing approximately half a kilogram of cocaine to his brother Michael Scarborough in Omaha, Nebraska. The label on the package stated that it was from "Tony Patterson" at "1768 Billing." In the city section of the return address, "Aur" was crossed out and replaced by "Den, CO." The package was addressed to "Micheal [sic] Patterson," "3020 Newport St.," "Omaha, Nebr. 68112."

Omaha postal inspectors detained the package and submitted it to a certified narcotics-trained canine because it fit a suspicious package profile. Pogo, the dog, alerted to the package, motivating the inspectors to obtain a federal search warrant and open it. The package contained two items: a sealed

telephone box, which contained cocaine, and a toy Tonka truck still in its cardboard frame.

The postal service then conducted a controlled delivery of the package to the delivery address, where it was accepted and signed for by Michael Scarborough, using the name "Michael Smith." The postal inspectors and Omaha police obtained a no-knock search warrant for the delivery locale and, about 15 minutes after delivering the package, entered the house, found the unopened package behind a couch and arrested Michael Scarborough.

Denver Postal Inspector Earl Winsor testified at trial that in April 1995, prior to Donald Scarborough's arrest, he obtained handwriting samples from the defendant, pursuant to a federal grand jury subpoena, and fingerprinted him. The original mailing label for the Express Mail package in which the cocaine was found, along with defendant's handwriting sample and fingerprint chart, were sent to the Postal Inspection Service crime laboratory in Chicago, Illinois for analysis. The lab found four latent prints on the label, one of which was identified as the defendant's left thumbprint. Defendant was arrested in January of 1996.

**II**

**A. The Delayed Disclosure of Exculpatory Material**

The government's final witness was Roger Ball, the forensic scientist from the Chicago lab. At the close of the government's direct examination of Ball, the

prosecutor inquired whether Ball had been asked "in connection with this case to conduct any other kind of analysis." Appellant's Supp. App. at 226. The following exchange ensued:

A.     Yes, sir, I was.

Q.     What was that?

A.     I was requested by Inspector Winsor, I believe it was, to compare the fingerprints of an additional case from Omaha to see if I could identify any latent prints in that specific case with the submitted prints of Donald C. Scarborough.

Q.     And were you able to do that?

A.     No, sir, they were not identified with that particular case.

Id. At this point the government ended its direct examination of the witness, and the defense requested a bench conference. Apparently this was the first time either defense or prosecution had been informed of another analysis conducted by Ball in connection with this case. The trial judge granted a 15-minute recess so both sides could question the witness to clarify this testimony. The recess interview of Ball revealed that, in late 1994, Douglas Czepa of the U.S. Postal Inspection Office in Omaha had sent the various items taken from the package containing the cocaine, including the Tonka truck and the telephone box, to the Chicago crime lab for a fingerprint analysis which revealed latent prints. In March 1996, about 60 days prior to the trial of Donald Scarborough, Inspector Winsor asked the lab to compare the latent prints found on the package's contents

- 4 -

to those of defendant. This test, conducted by a lab employee who was not a witness at the trial, revealed that defendant's prints did not match the latent prints developed from the Tonka truck. The defense had not been informed of the 1994 test for prints on the items in the package containing the cocaine, the 1996 analysis showing that the latent prints developed from the Tonka truck did not match defendant's, or the written report regarding this negative comparison.

As a result of this revelation of exculpatory material just prior to the end of trial, the defense moved to dismiss the case and for sanctions against the government for violating Brady v. Maryland, 373 U.S. 83 (1963). The defense asserted prejudice from this alleged violation based on the fact that its trial strategy, in particular its opening statement to the jury and cross-examination of witnesses, as well as any decision to put defendant on the stand, might have been substantially different if this information had been disclosed earlier. The judge denied the motion and sanctions on the grounds that any harm to the defense from the late disclosure of the exculpatory material could be cured by cross-examination of the witness.

In Brady, the Supreme Court stated, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. We review de novo a

claim of failure to disclose evidence in violation of Brady. United States v. Rogers, 960 F.2d 1501, 1509 (10th Cir. 1992). Brady mandates reversal when a failure to disclose is coupled with a finding that the evidence is "material," meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985); see United States v. Young, 45 F.3d 1405, 1408 (10th Cir. 1995). In this case, the evidence was eventually disclosed to the defense, albeit towards the end of the trial. "This court has previously held that Brady is not violated when the Brady material is made available to defendants during trial." United States v. George, 778 F.2d 556, 561 (10th Cir. 1985) (citing United States v. Behrens, 689 F.2d 154, 158 (10th Cir. 1982) and United States v. Alberico, 604 F.2d 1315, 1319 (10th Cir. 1979)). As this court has observed, "[w]hile we strongly disapprove of delayed disclosure of Brady materials, that alone is not always grounds for reversal. As long as ultimate disclosure is made before it is too late for the defendant[] to make use of any benefits of the evidence, Due Process is satisfied." United States v. Warhop, 732 F.2d 775, 777 (10th Cir. 1984) (citation omitted) (finding disclosure of ostensibly exculpatory report to defense during cross-examination of government witness not Brady violation because defendant was able to use evidence).

Following the recess, defense counsel extensively cross-examined Ball regarding the tardily-disclosed evidence. Defense counsel also used the exculpatory material to strong effect in his closing argument. Under these circumstances, the fact that the material, if disclosed earlier, may have affected the defense strategy does not mandate reversal. "We have held that, 'the relevant standard of materiality does not focus on the trial preparation, but instead on whether earlier disclosure would have created a reasonable doubt of guilt that did not otherwise exist.'" Rogers, 960 F.2d at 1511 (quoting George, 778 F.2d at 562). The late disclosure of this exculpatory information is troubling, and it highlights the need for vigilance by prosecutors in ensuring that government agents are informed of and respect Brady requirements. Ultimately, however, appellant has not shown that earlier disclosure of this material would have created any greater doubt about defendant's guilt or affected the result of the trial. Thus, the trial court did not err in denying the motion to dismiss.

**B. Jury Instructions**

Appellant claims that the trial court's refusal to allow defendant's proposed jury instruction number four denied him his right to a fair trial. "Jury instructions must be examined as a whole and a de novo standard of review is applied to determine the propriety of an individual jury instruction to which objection was made at the time of trial." United States v. Mullins, 4 F.3d 898, 900 (10th Cir.

1993) (citations omitted). A reviewing court must have "substantial doubt that the jury was fairly guided" in order to reverse a judgment below. Id. (citation omitted); see also United States v. Barrera-Gonzales, 952 F.2d 1269, 1271 (10th Cir. 1992) ("[A]ppellate court must review the record as a whole to determine whether the instruction stated the governing law and provided the jury with ample understanding of the issues and standards applicable.").

Proposed instruction four, as modified by the court prior to ultimately deciding to reject it, states that "[m]omentary possession of a package containing contraband does not in itself prove that the defendant had knowledge of the contents of the package." Defendant claims that in declining to give this instruction the court failed to instruct the jury on one of his theories of defense, and that such an omission is reversible error because the evidence supports the theory presented in the instruction. See United States v. Felsen, 648 F.2d 681, 685-86 (10th Cir. 1981). The defendant does not dispute that the charge given to the jury included an instruction proffered by defendant on his theory of defense. That other instruction states:

> The defendant, Donald C. Scarborough, has pleaded not guilty to the charge contained in the indictment, and this plea of not guilty puts in issue each of these essential elements of the offense described in the instructions, and imposes on the government the burden of establishing each of these elements by proof beyond a reasonable doubt.

> The defendant, Donald C. Scarborough, contends that he did not at any time knowingly possess the cocaine at issue in this case. The

- 8 -

defendant further contends that he never intended to distribute the cocaine at issue in this case, and the defendant denies that he had knowledge of the contents of the package.[1]

\* \* \*

As used in these instructions, possession is the exercise of dominion, control or authority over the controlled substance in question.

Appellant's Supp. App. at 313-14. Defendant's rejected instruction sets forth an argument in support of an inference the jury could draw from the evidence. Cf. United States v. Chadwick, 532 F.2d 773, 784 (1st Cir. 1976) (relationship between extent of possessory interest and knowledge of contents is question of inference), aff'd, 433 U.S. 1 (1977). We conclude the district court did not err in excluding such an instruction from its charge to the jury. The charge given, considered as a whole, correctly states the law, fairly and adequately covers the issues presented, and defines both "possession" and "knowingly" in such a manner as to allow the jury to draw the inference sought by the rejected instruction; as the instructions adequately state Scarborough's defense of possession in factual terms and correctly instruct the jury on the law applicable to that defense, error did not occur.

---

[1]This paragraph was adapted by the trial court from defendant's proposed instruction number nine.

## C.  Denial of Motion to Suppress

Appellant challenges the district court's denial of his motion to suppress the cocaine on the ground that it was illegally seized.[2]  In reviewing the denial of a motion to suppress, we must accept the trial court's findings of fact unless they are clearly erroneous, and all the evidence is viewed in the light most favorable to the government.  United States v. Knapp, 1 F.3d 1026, 1027 (10th Cir. 1993).

According to appellant, the initial detention of the package by postal authorities, pending Pogo's sniff, was an illegal search and seizure under the Fourth Amendment.  The temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity.  See United States v. Van Leeuwen, 397 U.S. 249, 250 (1970). In the present case, the package shared some of the characteristics of a profile developed to identify narcotics packages in that it contained a handwritten label; was going from an individual to an individual; was coming from a narcotics source state; bore no return zip code; had a misspelled return address street; contained a correction in the city portion of the return address; and was found to contain a nonexistent return address street number.  Scarborough argues that each of these factors taken alone may be innocent, and they cannot be combined to

_____

[2]The government argues that appellant lacks standing to contest the seizure of this evidence because he has no recognizable privacy interest in the contents of a package on which his name does not appear.  We need not address this issue because we find that, even assuming that defendant does have standing, it is clear that there was no constitutional violation in either the initial detention or subsequent search of the package.

create reasonable suspicion. We do not agree. A combination of seemingly independent innocent factors may create a reasonable suspicion justifying detention for a dog sniff if the factors substantially reflect elements of a suspicious profile. See United States v. Lux, 905 F.2d 1379, 1382 (10th Cir. 1990) (package meeting three factors from postal service's "drug package profile" gives authorities sufficient reasonable suspicion to subject package to drug detection dog); cf. United States v. Williams, 726 F.2d 661, 663 (10th Cir. 1984) (police recognition that individual's behavior matches certain elements of drug courier profile provides reasonable suspicion to justify stop and dog sniff of luggage).

Appellant also challenges the government's reliance on Pogo to obtain the search warrant and open the package. It is undisputed that a drug sniffing dog's detection of contraband in itself establishes probable cause for a search warrant. See Williams, 726 F.2d at 663 (drug sniffing dog's alert on luggage provides probable cause for arrest). Appellant argues, however, that Pogo's 79% reliability rate when working with postal inspectors, as reflected in the affidavit submitted in support of the search warrant, as well as the absence of any details on his training and his apparent lack of continued training, raise questions about whether Pogo's abilities are sufficient to create probable cause. The analysis of a properly drafted search warrant affidavit requires only that there be a "substantial basis"

for finding probable cause.  United States v. Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996) (en banc).  The affidavit states that Pogo is certified, was trained to alert to drug odors at the Rudy Drexler School for Canines in Omaha, and had alerted approximately 65 times to controlled substances and contraband in four-and-one-half years on the job.  Drugs were not found five of those times -- for an overall reliability rate of 92 percent.[3]  The accuracy of the affidavit is not challenged and, with such a success rate, we do not agree it was clear error for the trial court to find that Pogo is a credible narcotics dog and that his alert adequately supports the finding of probable cause.

### D.  Admission of Evidence

Appellant challenges the admission into evidence of nine earlier Express Mail labels and his two driver's licenses, claiming that any probative value of that evidence is substantially outweighed by prejudice to the defendant.  A district court has broad discretion in balancing the probative value of evidence against its potential prejudicial effect, and will be reversed only on a showing of abuse of that discretion.  United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  We find no abuse of discretion in the admission of any of these items.

---

[3]While on specific assignment for the Omaha postal service, Pogo's skills were utilized approximately 24 times, resulting in 19 alerts, four of which resulted in no drugs, about a 79 percent success rate.  Defendant's argument that we should discard Pogo's overall history of reliability and look solely to his lower success rate in the subset related to postal investigations is rejected because no reasons are provided as to why Pogo's abilities might be materially affected by working for the postal service.

1. Admission of the Labels

Postal Inspector Czepa testified that after Michael Scarborough's arrest he had ordered a search for any other labels (previously pulled and filed separately by the Omaha postal inspection office) that contained either the same address, same street name or same names as the label of the package in which the cocaine was found. Over defense objections, the court allowed into evidence nine Express Mail labels dated between May 23, 1991 and November 23, 1993 retrieved from this search. The court instructed the jury that though Czepa testified that these labels had been pulled because they were identified as part of "something called a profile and, therefore, in some way suspicious to [the witness]," the jury was not to consider them "as any evidence that [they] were in fact used for packages in which cocaine or something else, a drug, was contained. They are simply labels that were collected through this process and put in the file. So they're received simply for what they are, as labels out of the files." Appellant's Supp. App. at 42.

Appellant tells us the admission of these nine labels was reversible error because the labels lack any probative weight due to prosecutorial failure to link the nine earlier labels to the label at issue, to other drug transactions or to defendant. Appellant contends the admission is substantially prejudicial, in that it may have led the jury to infer that Scarborough mailed drugs from Denver to

Omaha on nine prior occasions, or that he must have mailed the Express Mail package found to contain cocaine because he mailed the earlier packages.

Appellant's argument is patently wrong. Beverly Mazur, a handwriting analyst employed by the Nebraska Police Crime Lab in Omaha, testified at trial that the "to and from sections" of the Express Mail label on the package containing the cocaine were written by the same person who wrote the nine other Express Mail labels. When he was arrested, defendant had in his possession two driver's licenses, each with his picture. One showed the name "Donald Scarborough, Jr." with an address at "4604 Sable St.," "Denver CO 80239," and the other showed the name "Carvin Teon Scarborough" with an address at "1300 Adam St. 205," "Denver CO 80206." Three of the nine contested labels list Donald Scarborough as the sender, and one lists Carvin Scarborough as the recipient. Six of the labels, one of which was from a "Tony Patterson" (listed as the sender on the package in question), contain the Adam Street address listed on one of the defendant's driver's licenses, and another contains that same Adam Street address with a different apartment number. Still another label contains the Sable Street address listed on the other driver's license.

The judge's limiting instruction to the jury upon admitting these nine labels into evidence mitigated any prejudice that may have arisen from improper consideration of the labels as evidence of prior crimes, bad acts or of a modus

- 15 -

operandi of engaging in suspicious mail transactions. The district judge did not abuse his discretion in concluding that these nine labels, linked to the defendant through his two driver's licenses and linked to the label on the package containing the cocaine through handwriting analysis, were crucial to establishing the identity of the sender of the package containing the cocaine, and this circumstantial value outweighs any potential prejudice.

2.    Admission of the Driver's Licenses

Appellant also challenges the admission into evidence of one of the two Colorado driver's licenses found on his person when he was arrested in January 1996. At trial, defense counsel objected to the admission of the license containing the name "Carvin Teon Scarborough" along with defendant's picture on the ground that it was irrelevant because it was issued on October 10, 1992, nineteen months prior to the date of the crime. Defense counsel stressed admission would be inordinately prejudicial because the jury might infer from the presence of an alias on the license that defendant had been involved in illegal activities long before the crime in question. The court denied the objection and also denied defendant's request to redact the alias from the license.

Both driver's licenses were probative of a key issue at trial, linking defendant to the nine earlier labels and, through handwriting analysis, to the label on the package containing the cocaine. The fact that the license with the alias

was issued in October 1992, nineteen months before the crime in question, does not lessen its relevance. The nine labels were mailed between May 1991 and November 1993. Therefore, the issuance of the license with the alias was contemporaneous with at least some of the nine labels. The district court properly concluded that redaction of the alias name would have detracted from the probative link between the earlier labels and the label on the package with the cocaine, because at least one of the earlier labels contained the name "Carvin Teon Scarborough" and another contained the address appearing on that license. As both licenses were relevant to linking defendant to the crime, the district court did not abuse its discretion in admitting them without redaction.

### E. Preclusion of Testimony

During cross-examination of Inspector Czepa and Omaha police officer John Neaman, the defense sought to elicit testimony that the federal charges against Michael Scarborough had been dismissed for speedy trial violations. The government objected on the grounds of hearsay and relevance, and the court sustained the objections. Appellant now argues that in preventing him from eliciting such testimony, "the district court precluded [defendant] from presenting key evidence supporting his theory of defense, i.e. that federal agents unfairly targeted him only after failing to successfully prosecute Michael." Appellant's Br. at 35. According to appellant, the testimony is probative because it bears on

the credibility of the government's witnesses, and, moreover, the government opened the door to such information by describing Michael Scarborough's arrest in its opening statement and alluding to it throughout the trial.

A trial court's decision to exclude evidence is reviewed for abuse of discretion and will be reversed only if it is manifestly erroneous. See United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993). Appellant has not shown how the testimony it sought to elicit bears on defendant's guilt or innocence and did not establish at trial that either witness had personal knowledge of the status of Michael Scarborough's case. The district court acted squarely within its discretion. We will not disturb its determination that such testimony lacked foundation or could confuse the jury about issues that were not probative of defendant's guilt or innocence. Moreover, the district court was appropriately concerned that such testimony could lead to improper argument -- i.e., that Donald Scarborough's innocence was linked to Michael Scarborough's innocence, which, in turn, was conclusively demonstrated by the dismissal of the charges against him.

**AFFIRMED.**