**Crystal Denise PREWITT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–CA–002308–MR.

Court of Appeals of Kentucky.

June 3, 2011.

Emily Holt Rhorer, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Michael J. Marsch, Assistant Attorney General, Frankfort, KY, for appellee.

Before CAPERTON and DIXON, Judges; LAMBERT,[1] Senior Judge.

## OPINION

DIXON, Judge:

Appellant, Crystal Denise Prewitt, appeals from the Fayette Circuit Court's denial of her motion to suppress the evidence underlying her conditional plea of guilty to facilitation to trafficking in marijuana greater than five pounds. For the reasons stated below, we affirm.

On April 1, 2009, the Lexington Police Department was performing a scheduled parcel interdiction operation at a Federal Express facility. Officer Courtney Komara was working with Federal Express employees when she identified a package she believed to be suspicious based upon the facts that (1) it had handwritten labels; (2) it was sent from an individual to an individual; (3) the source city was McCalin, Texas, a border city; (4) the source return address was a Mailbox Store; (5) the source individual had prepackaged the item; (6) the package was sent overnight priority delivery; (7) there was no signature required for delivery; and (8) the Lexington destination, Hollow Creek Road, was an area known to officers as receiving numerous complaints for drug activity. Officer Komara later testified that although any one of the factors, standing alone, would have been insufficient to raise her suspicions, the totality of the circumstances made the package suspicious. Therefore, it was pulled off the line and placed with four other non-suspicious packages. All were presented to Komara's certified drug dog, who alerted positively on the suspicious package.

After obtaining a search warrant, officers opened the package and discovered eighteen pounds of marijuana, packaged in six separate bundles. Since the scheduled delivery time had already passed, Officers Danny Page and Jennifer Lube went to the delivery address the following day. Although the package was addressed to a Joe A. Brizuela, officers were met by Jose and Claudia Perez, who claimed they did not know Brizuela and had no knowledge of the package. Nevertheless, the Perezes voluntarily consented to a search of their apartment. Officers found no evidence indicating they were connected to the marijuana.

---

1. Senior Judge Joseph Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Later the same day, Federal Express attempted delivery of a different package to a Crystal Wetzel at 201 Spring Station Drive. Because the driver knew that such was not a valid address he attempted delivery to 2001 Spring Station Drive, however the person at the address refused acceptance of the package. After the driver returned to the Federal Express facility, employees noticed that the package was similar to the one seized the previous day and notified the police. Upon arrival, Officer Komara observed that the package had all of the same characteristics as the previous one, including origination and delivery method. As a result, the package in question was placed with four other non-suspicious packages and presented to the drug dog, who positively alerted on it.

After obtaining a second search warrant, police opened the package and discovered eighteen pounds of marijuana, packaged in five separate bundles. During this same time period, Officer Komara was advised that someone had called the facility inquiring as to how to pick up the package. Police then resealed the package and, at approximately 4:30 p.m., Appellant arrived at the facility to claim the package. After signing for acceptance, Appellant was arrested and read her Miranda rights. She informed police that she was picking up the package for a friend who was waiting in the car. Police went outside and found Jose Perez. Officers recognized him as being the same individual they had questioned the day before. Perez admitted that both packages were his, but that Appellant was aware of what they contained. Perez was thereafter arrested as well.

On May 27, 2009, Appellant and Perez were indicted by a Fayette County Grand Jury for trafficking in marijuana greater than five pounds. Appellant initially entered a plea of not guilty and thereafter filed a motion to suppress. Following a hearing, the trial court denied the motion and Appellant entered a conditional *Alford* plea to an amended charge of facilitation to trafficking, reserving the right to appeal the suppression issue. The trial court sentenced Appellant to twelve months' imprisonment, probated for a period of two years. This appeal ensued.

■ Appellant argues that the trial court erred in denying her motion to suppress evidence "in violation of her state and federal constitutional rights to be free of illegal search and seizure." Specifically, Appellant claims that Officer Komara had no reasonable suspicion to detain the first package, and, as a result, the second package was tainted evidence as "fruit of the poisonous tree." Further, Appellant contends that the second search warrant was invalid due to inaccurate information contained in the affidavit. We find no merit in any of Appellant's claims.

■ Our standard of appellate review of a suppression ruling regarding a search pursuant to a warrant is to determine first if the facts found by the trial judge are supported by substantial evidence, RCr 9.78, and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a "substantial basis for ... conclud[ing]" that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Commonwealth v. Pride,* 302 S.W.3d 43, 49 (Ky.2010). In doing so, we must give great deference to the warrant-issuing judge's decision. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317. We also review the four corners of the affidavit and not extrinsic evidence in analyzing the warrant-issuing judge's conclusion. *Commonwealth v. Hubble,* 730 S.W.2d 532 (Ky. App.1987).

The trial court herein focused on two distinct questions. First, in determining whether officers had reasonable suspicion

of criminal activity to warrant inception and detention of the packages, the court examined the circumstances surrounding the detention of both the first and second package. Second, the court scrutinized whether the affidavit in support of the warrant on the second package contained inaccurate information that would have rendered the warrant invalid. With respect to whether the officers had reasonable and articulable suspicion of criminal activity, the trial court found,

> This Court finds that each of the packages was in fact seized, even if for a short period of time, in order for the drug dog to perform its duties. The question then becomes whether police had a reasonable suspicion of criminal activity to justify the temporary detention. *U.S. v. Scarborough,* 128 F.3d 1373, 1378 (10th Cir.1997). Upon reviewing the totality of the circumstances in each situation, as was presented by a trained law enforcement officer in the area of postal inspection, this court finds that the police did have reasonable and articulable suspicion to briefly seize the packages.
>
> The Defendants also argue that under the doctrine of Fruit of the Poisonous Tree, the second parcel is tainted evidence and should be inadmissible. The Court finds that even though the second parcel was not identified as suspicious until delivery was refused, the same factors that supported the reasonable and articulable suspicion of criminal activity in the first package were present in the [second] package.

█ "It has long been held that first-class mail such as letters and sealed packages subject to letter postage ... is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." *United States v. Van Leeuwen,* 397 U.S. 249, 251, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). Yet even first-class mail is not beyond the reach of all inspection. *Id.* Further, "only reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." *United States v. Alexander,* 540 F.3d 494, 501 (6th Cir. 2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1923, 173 L.Ed.2d 1070 (2009) (*quoting United States v. Robinson,* 390 F.3d 853, 870 (6th Cir.2004)).

We are of the opinion that the *Scarborough* case relied on by the trial court has facts analogous to those herein. In *Scarborough,* a drug-sniffing dog alerted on a suspicious package during a routine parcel interdiction at an airport mail facility. In affirming the federal district court's denial of a suppression motion based upon unlawful search and seizure, the Tenth Circuit Court of Appeals held:

> The temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity. *See United States v. Van Leeuwen,* 397 U.S. 249, 250, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282 (1970). In the present case, the package shared some of the characteristics of a profile developed to identify narcotics packages in that it contained a handwritten label; was going from an individual to an individual; was coming from a narcotics source state; bore no return zip code; had a misspelled return address street; contained a correction in the city portion of the return address; and was found to contain a nonexistent return address street number. Scarborough argues that each of these factors taken alone may be innocent, and they cannot be combined to create reasonable suspicion. We do not agree. A combination of seemingly independent innocent factors

may create a reasonable suspicion justifying detention for a dog sniff if the factors substantially reflect elements of a suspicious profile. *See United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir. 1990) (package meeting three factors from postal service's "drug package profile" gives authorities sufficient reasonable suspicion to subject package to drug detection dog); *cf. United States v. Williams,* 726 F.2d 661, 663 (10th Cir.1984) (police recognition that individual's behavior matches certain elements of drug courier profile provides reasonable suspicion to justify stop and dog sniff of luggage):

*U.S. v. Scarborough,* 128 F.3d at 1378.

Appellant does not seem to dispute that Officer Komara identified several suspicious indicators with the first package. Rather, she takes issue with Officer Komara's "fail[ure] to articulate how the indicators on this package were different than similar indicators found on packages shipped by innocent parties," and her failure to establish the "percentage of alerts to packages she had identified as suspicious...." Thus, it is Appellant's position that the first package was detained without reasonable suspicion.

██ Reasonable suspicion is a flexible concept and must be applied in a common-sense manner based upon the totality of the circumstances. *Baltimore v. Commonwealth,* 119 S.W.3d 532, 539 (Ky.App. 2003). Further, "[i]n determining the totality of the circumstances, a reviewing court ... must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training." *Id.* (footnote omitted). As explained by the Sixth Circuit Court of Appeals in *United States v. Alexander,* 540 F.3d 494, 501 (6th Cir. 2008), "[a]lthough we have not adopted the Postal Service's "drug package profile" as

the test for reasonable suspicion, we have relied on many of the same factors in analyzing an officer's decision to investigate a package."

The Postal Service's "drug package profile" targets packages based on: (1) the size and shape of mailing; (2) whether the package is taped to seal all openings; (3) whether the mailing labels are handwritten; (4) whether the return address is suspicious, e.g., the return addressee and the return address do not match, or the return address is fictitious; (5) unusual odors coming from the package; (6) whether the city of origin and/or city of destination of the package are common "drug source" locales; and (7) whether there have been repeated mailings involving the same sender and addressee.

*Id.* (FN 2).

██ We agree with the trial court that in reviewing the totality of the circumstances given Officer Komara's training and experience, she had reasonable and articulable suspicion to detain the first package. Furthermore, we find absolutely no merit in Appellant's claim that the detention was unduly lengthy. Officer Komara testified that she first noticed the package between 7:45 and 8:30 a.m., and the package was presented to the drug dog at 9:55. We fail to perceive any prejudice or error in this time period. Finally, because we conclude that the first package was properly detained and seized, we necessarily reject Appellant's argument that the second package was tainted evidence as being "fruit of the poisonous tree."

██ Finally, Appellant challenges the sufficiency of the affidavit supporting the second search warrant. Specifically, Appellant argues that because the second affidavit was essentially "cut and pasted" on the computer from the first affidavit, it

contained erroneous information pertaining to the first package rather than the second. Further, Appellant points out that the affidavit contained no information as to the drug dog's reliability or information about the other non-suspicious packages used in the line-up.

When a defendant challenges a search warrant based on the claim that the information is inaccurate, he must prove that: "(1) the affidavit contains intentionally or recklessly *false* statements, and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *Hayes v. Commonwealth,* 320 S.W.3d 93, 101 (Ky.2010). *See also Commonwealth v. Smith,* 898 S.W.2d 496, 503 (Ky.App.1995); *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). With respect to the second affidavit, the trial court herein noted,

> Upon review of the affidavit and the testimony of Officer Komara, this Court finds that even though Officer Komara testified that she had used "cut and paste" in preparing the affidavit that there was sufficient accurate information presented to establish probable cause for the issuance of the search warrant. The fact that the officer did not specify with particularity in the affidavit what the suspicious package included, nor the similarities with the package the day before, this does not deem the affidavit fatal. The Court finds that there is no evidence to establish intentional misleading or even recklessness and there is a sufficient basis to establish probable cause.

We too have reviewed the affidavit and believe that it was sufficient to establish probable cause. Officer Komara did inadvertently include information that the second package was discovered during a routine postal inspection, when in fact it was the first package that was discovered during the inspection. Notwithstanding, the affidavit clearly indicates that officers found indicators that warranted presenting the package to the drug dog. The affidavit states that "[s]ome of the factors displayed involved the packaging, city of origin, as well as address of destination." Further, the affidavit sets forth in detail the procedure followed with the drug dog, his results, as well as his training and certification. Thus, we agree with the trial court, that even after removing the inaccuracies, the remaining information contained in the affidavit was more than sufficient to establish probable cause justifying the issuance of the search warrant.

For the reasons set forth herein, the order of the Fayette Trial Court denying Appellant's motion to suppress to affirmed.

ALL CONCUR.