Filed 8/23/23  P. v. Calloway CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TONY CARL CALLOWAY, JR.<br><br>Defendant and Appellant. | F084606<br><br>(Madera Super. Ct.<br>No. MCR069483)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Robert Gezi, and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Appellant Tony Carl Calloway, Jr. was found guilty by a jury of driving or taking a vehicle without consent, reckless evasion, and possession of drug paraphernalia.  In a bifurcated trial, the jury also found true Calloway had suffered a previous serious or

violent felony conviction. The trial court sentenced him to an aggregate prison term of six years.

Calloway raises several claims on appeal. First, Calloway contends that officer testimony about the contents of surveillance video footage, which was not available at trial, was admitted in violation of the secondary evidence rule. Second, he claims that a late disclosed police report constituted a *Brady*[1] violation. Third, Calloway argues the officers' failure to procure a copy of the surveillance video before it was destroyed constituted a *Trombetta/Youngblood*[2] violation. Finally, he asserts that the cumulative prejudice from these issues necessitates reversal of his conviction. Finally, insofar as trial counsel failed to object to the evidence on the above grounds, Calloway argues ineffective assistance of counsel.

We affirm.

## PROCEDURAL HISTORY

On May 7, 2021, an information charged Calloway with driving recklessly while fleeing a pursuing peace officer (Veh. Code, § 2800.2; count 1), driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a); count 2), and possession of drug paraphernalia (Health & Saf. Code, § 11364; count 3)[3]. Additionally, as to counts one and two, the information further alleged that Calloway had suffered a prior serious or violent felony (Pen. Code, § 667, subds. (b)–(i)).

On August 25, 2021, a jury convicted Calloway on all counts. Following a bifurcated bench trial, the trial court found Calloway's prior strike allegations true.

---

[1] *Brady v. Maryland* (1963) 373 U.S. 83.
[2] *California v. Trombetta* (1984) 467 U.S. 479; *Arizona v. Youngblood* (1988) 488 U.S. 51.
[3] Calloway was also charged with driving while restricted in violation of Vehicle Code section 14601.5, however that charge was dismissed.

On May 16, 2021, the trial court sentenced Calloway to six years as to count 1, two years concurrent as to count 2, and 90 days' concurrent jail time as to count 3. The trial court struck Calloway's prior strike as to count 2.

Calloway filed a timely notice of appeal.

### STATEMENT OF FACTS

On April 11, 2021, Frank Dias, Jr. parked his Tesla X at a supercharging station in Madera County and left to get food with his family. When he returned, his car was gone. Dias tracked the Tesla using a phone application and contacted law enforcement.

California Highway Patrol Officer Isaac Martinez located Dias's Tesla and attempted to initiate a traffic stop. Although the driver initially pulled over and complied with instructions to place his hands out of the window, when Officer Martinez asked the driver to exit the vehicle, the driver sped away.

California Highway Patrol Officer Noe Gonzalez was able to keep track of the Tesla from a helicopter. Officer Gonzales estimated the Tesla was traveling in excess of 100 miles an hour as it drove on Highway 99. The Tesla then took an exit, struck a road sign, and drove into oncoming traffic. Ultimately, the Tesla parked in front of a hotel, underneath the overhang by the hotel's entrance. Officer Gonzalez testified that he was not able to see the driver of the vehicle, and he did not see anyone leave the area of the hotel.

Officer Martinez pursued the driver into the hotel. Because he did not see the driver exit the Tesla, he reviewed the hotel's surveillance footage. The footage showed one angle where the Tesla drove under the hotel overhang and parked, then a second angle where shortly after, a man is seen running through the lobby. The man was wearing a white T-shirt and mask, had dreadlocks and distinctive shoes with white lettering. The man skipped or hopped down the west side hallway and went out of the door at the end of the hallway. Following a search of the premises, officers detained Calloway.

3.

Officer Martinez recognized Calloway as the man in the surveillance footage and placed him under arrest. Upon searching Calloway, Officer Martinez found two glass pipes with white powder residue in Calloway's bag.

California Highway Patrol Officer John Marsh also testified to watching the surveillance video. His description of the suspect was similar to Officer Martinez's description, but Officer Marsh also observed the suspect wearing bracelets and a large watch on his wrist. Officer Marsh also testified that, on the surveillance video, he saw the driver get out of the Tesla.

## DISCUSSION

## I. The Officers' Testimony Regarding the Video Surveillance Footage Did Not Violate the Secondary Evidence Rule

Calloway argues Officer Martinez's and Officer Marsh's testimony about the contents of the surveillance video violated the secondary evidence rule. Calloway argues a genuine dispute concerning the material contents of the surveillance video existed, and the officers failed to procure a copy of the video with fraudulent intent.

For purposes of our discussion, we presume that despite his failure to specifically raise a secondary evidence rule objection below, Calloway has not waived his argument. We conclude the trial court did not abuse its discretion by admitting the officers' testimony about the contents of the surveillance video.

### A. *Trial Court Ruling*

Prior to the beginning of trial, defense counsel objected to Officer Martinez's testimony regarding the contents of the hotel surveillance video. Counsel stated, "I believe [the testimony] rests on a surveillance video that we have not received, and I believe there's a lack of foundation, and it violates Mr. Calloway's Sixth Amendment right to confront and cross-examine witnesses. We don't have the video."
The trial court noted that Calloway had already been identified at the preliminary hearing and asked where the video was. The prosecution responded, they did not have the video,

4.

and "[i]t was not retrieved by either CHP or ourselves in time before it was destroyed …."

The trial court overruled the objection and stated, "[T]he defense also could have got it in as the third party. It wasn't in the hands of law enforcement."

**B.** *Officer Testimony*

Officer Martinez testified about the contents of the surveillance video twice – first at the preliminary hearing, and then at trial. At the preliminary hearing, Officer Martinez testified he was able to view the surveillance footage, and that "we were able to watch the individual get out of the vehicle, cross in front of the vehicle, and then, we went to a different camera angle, and we were able to see the driver walk through the lobby. In a third camera angle, we were able to see the individual go down the west side hallway. As he was going down, he was hopping and skipping."

Officer Martinez also testified that he had received a description of the suspect from the helicopter – a black male wearing a white T-shirt, who had dreads. He then stated that the individual in the security footage had the same appearance as the description provided by the helicopter. Finally, Officer Martinez noted the telling pieces of clothing the suspect was wearing – a particular pair of Champion branded shoes, where the word Champion was written out in white lettering.

At trial, Officer Martinez testified that when he arrived at the hotel, he first obtained information that the driver was wearing a white T-shirt. He then viewed the surveillance video and got a clear view of an individual running across the hotel lobby shortly after the Tesla pulled up in front of the hotel. Officer Martinez described the individual as wearing a white T-shirt and a mask, with dreadlocks and unique shoes with white lettering spelling "Champion." On cross-examination, Officer Martinez confirmed that he did not see anyone exit the Tesla. He also confirmed that he did not obtain the surveillance video from the hotel.

5.

Officer Marsh also testified he had viewed the surveillance video. He stated he saw the driver get out of the Tesla and enter the hotel. He described the driver as having dreadlock-style hair and stated that he wore a black beanie-style hat, a large watch on his left hand, and a distinctive beaded style bracelet on his right hand. He also observed the driver had shoes with white lettering on them. On cross-examination, Officer Marsh testified that he had attempted to obtain the hotel's surveillance footage but did not follow up.

### C. *Legal Standard*

Video recordings with imprinted data are writings, and to be admissible into evidence must either be the original, or otherwise admissible secondary evidence of the videos' content. (Evid. Code, §§ 250, 1520–1523.)[4]

A court shall exclude secondary evidence of the content of writing if 1) there exists a genuine dispute concerning material terms of the writing and justice requires exclusion, or 2) the admission of the secondary evidence would be unfair. (§ 1521, subd. (a).) Oral testimony to prove the content of a writing is generally inadmissible. (§ 1523, subd. (a).) Oral testimony is admissible, however, if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent. (§ 1523, subd. (b).)

We review the trial court's ruling concerning the admissibility of evidence for abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 264.)

### D. *Analysis*

#### 1. The Officers' Testimony Was Admissible Pursuant to Section 1521

"In assessing the trial court's evidentiary ruling, we must consider the facts known to the court at the time the ruling was made." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243.) When the trial court ruled Officer Martinez may testify as to the contents of

---

[4] All further statutory references are to the Evidence Code unless otherwise stated.

the surveillance video, there was no genuine dispute as to the video's contents. (§ 1521, subd. (a)(1).) The court was only aware of Officer Martinez's preliminary hearing testimony,[5] and Officer Marsh had not previously testified. As stated by the trial court, Officer Martinez had already identified Calloway at the preliminary hearing. There was nothing inconsistent within Officer Martinez's testimony at the preliminary hearing stage. On this basis alone, the trial court did not abuse its discretion in admitting the officers' testimony.

If we should consider whether a genuine dispute as to the material contents of the surveillance video exists, Calloway argues the discrepancies between Officer Martinez's preliminary hearing and trial testimony, and Officer Marsh's testimony, require exclusion.

First, Calloway points out that at the preliminary hearing, Officer Martinez testified he saw an individual get out of the Tesla, but at trial Officer Martinez stated he never saw anyone exit the Tesla. Second, that at the preliminary hearing, Officer Martinez testified he received a description of the suspect from the helicopter. In contrast, at trial, Officer Martinez testified he "obtained information" that the driver was wearing a white T-shirt, but the source of that information was not disclosed. Officer Gonzalez also testified at trial he never saw the driver of the vehicle. Finally, Calloway argues that Officer Marsh did not testify consistently with Officer Martinez, because Officer Marsh testified that he *did* see the driver exit the vehicle, and his description of the individual included more details than those provided by Officer Martinez.[6]

However, Calloway has not explained how these inconsistencies create a *genuine* dispute as to the *material* content of the video. (§ 1521, subd. (a)(1).)

---

[5] The Honorable Judge Earnest J. LiCalsi presided over both the preliminary hearing held on May 10, 2021, and over the trial.

[6] Calloway also describes multiple inconsistencies between Officer Marsh's testimony and his report and statements made by hotel employees to the DA investigator, but none of these inconsistencies involve the contents of the surveillance video.

First, Calloway has not shown how the fact that Officer Martinez and Officer Marsh may or may not have seen the driver exit the Tesla on the surveillance video is material. Because no driver was found when officers arrived at the hotel, it cannot be disputed that a driver exited the Tesla.

Calloway has not explained how the testimony given at trial gives rise to a *genuine* dispute as to the content of the surveillance video. Officer Martinez testified that when he viewed the surveillance video, he saw the Tesla drive up to the hotel, and 10 seconds or less than a minute later, he saw a person running through the hotel lobby. Officer Marsh testified that he saw the driver exit the vehicle and run in a skipping manner through the hotel lobby. Temporally, the testimony appears consistent. The only dispute is whether the video showed a driver actually exit the Tesla, which as discussed above, necessarily happened.

Second, Calloway has not explained the relevance of whether Officer Gonzalez provided a description of the suspect to Officer Martinez. While Officer Martinez's preliminary hearing and trial testimony on this topic is inconsistent, it is not an inconsistency which relates to the contents of the surveillance video.

Finally, Calloway has not described how the inconsistencies between Officer Martinez's and Officer Marsh's description of the individual they saw on the surveillance video, gives rise to a genuine dispute as to the material contents of the video. Both Officer Martinez and Officer Marsh provide partially consistent descriptions of the individual running through the lobby – both testify that the individual had dreadlocks and had distinctive shoes with white lettering. Likewise, Officer Martinez's unique descriptors and Officer Marsh's unique descriptors do not contradict one another. Officer Martinez describes the individual as wearing a mask and a white T-shirt. Officer Marsh describes the individual as wearing a black beanie-style hat, a watch on his left hand and a beaded-style bracelet on his right hand. Because both testimony of the officers as to the

8.

contents of the surveillance video can be true, we cannot say that a genuine dispute as to that content necessarily exists.

Additionally, section 1521, subdivision (a)(1) provides that for evidence of a writing to be excluded, not only must a genuine dispute as to the material content of that writing exist, but justice must require exclusion. Calloway has not made any argument explaining why justice *required* exclusion of the officers' testimony, particularly in light of the officers' otherwise consistent description of the person running through the hotel lobby.

Calloway then argues the officers' testimony should have been excluded because it was unfair. (§ 1521, subd. (a)(2).) According to Calloway, the evidence was unfair because the officers and the prosecution failed to explain why the video was not preserved and failed to proffer any corroborating evidence of the identity of the Tesla driver, such as DNA evidence or fingerprints from inside the car.

Calloway has not shown admission of the officers' testimony was unfair. There is no evidence that the officers intentionally failed to preserve the surveillance video. Calloway had the opportunity to and did in fact cross-examine both officers concerning any inconsistencies in their testimony. These inconsistencies were also highlighted in trial counsel's closing argument. We conclude that Calloway has failed to show the trial court abused its discretion by admitting the officers' testimony concerning the contents of the hotel surveillance video.

### 2. The Challenged Testimony Was Admissible Pursuant to Section 1523

Officer Martinez and Officer Marsh's testimony regarding the contents of the surveillance video were admissible pursuant to section 1523, subdivision (b). The prosecution stated they did not have possession of the video, and the officers were unable to secure a copy before it was destroyed.

9.

Calloway argues that the officers' failure to procure a copy of the video is evidence of fraudulent intent. This argument is not supported by the record. There were no facts elicited which indicate fraud, only that the officers failed to secure a copy of the video before it was destroyed. Officer Marsh stated he attempted to get a copy but did not follow up. Officer Martinez confirmed he did not procure a copy either. Calloway had an opportunity to cross-examine both officers and did not ask either officer to explain why they failed to procure a copy of the video.

*People v. Myers* (2014) 227 Cal.App.4th 1219 is instructive. There, detectives accidentally erased a surveillance videotape while trying to copy it. Although the detectives were directly involved in the surveillance videotape's deletion, the appellate court found the trial court could reasonably conclude the detectives had accidentally deleted the videotape without fraudulent intent. (*Id.* at p. 1226, fn. 1.)

In this case, with absence of any evidence to the contrary, the trial court could reasonably conclude the officers failed to procure a copy of the video without fraudulent intent. Therefore, the officers' testimony was admissible pursuant to section 1523, subdivision (b), and the trial court did not abuse its discretion by admitting it.

## II.     Calloway Has Failed to Demonstrate That a *Brady* Violation Occurred

Calloway argues Officer Marsh's late disclosed incident report constituted a *Brady* violation. We disagree.

### A.     *Background – Late Disclosed Report*

On the first day of trial, the prosecutor disclosed to the trial court and Calloway that one of the witnesses mentioned a supplemental report had been prepared by Officer Marsh that the prosecutor had not received in a previous discovery request. The prosecutor stated they had secured a copy of the report and had provided it to Calloway earlier that day.

The following day, Calloway objected to the introduction of Officer Marsh's supplemental report. Calloway alleged that Officer Marsh's report contradicted another

report prepared by the prosecution's investigator. Officer Marsh's report contained information gathered from employees of the hotel, including the hotel's assistant manager. That same manager had told the prosecution's investigator they were not working the day Calloway was arrested. Calloway stated that he wanted to speak with the manager to impeach Officer Marsh.

The trial court stated that it would not grant Calloway a continuance at that point. However, the trial court stated that it would give Calloway time to secure the manager as a witness after the prosecutor concluded their case. The trial court also stated Calloway could cross-examine Officer Marsh about inconsistencies in the report.

Subsequently, the prosecutor explained why the report was not timely disclosed. Neither Madera nor Fresno California Highway Patrol offices had a record of the report. The prosecutor was only able to secure a copy by contacting Officer Marsh directly. The report was also never reviewed by a supervisor.

Calloway did not subpoena the hotel manager and opted to recall Officer Marsh to question him about inconsistencies in his report. Officer Marsh testified that he wrote the report within 10 days of the incident. According to Officer Marsh, it was not common practice to write the date on the report, and he did not know what happened with the report after he submitted it to his supervisor.

Ultimately, the trial court instructed the jury on the late disclosure of Officer Marsh's report, directing the jury to consider the effect, if any, of the late disclosure.

### B. *Legal Standard*

A *Brady* violation is the breach of the prosecution's broad obligation to disclose exculpatory evidence. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 175.) To prove a *Brady* violation, " '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043.)

11.

Generally, "[e]vidence actually presented at trial is not considered suppressed for *Brady* purposes, even if that evidence had not been previously disclosed during discovery." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 467.) An exception exists where defense counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case. (*Ibid.*; s*ee also U.S. v. Devin* (1990) 918 F.2d 280, 289, *U.S. v. Scarborough* (1997) 128 F.3d 1373, 1376.)

## C.      *Analysis*

Preliminarily, Calloway failed to raise a *Brady* violation at trial, and his claim is therefore forfeited. (*People v. Romero* (2008) 44 Cal.4th 386, 411; *People v. Carpenter* (1997) 15 Cal.4th 312, 411, abrogated on other grounds.)

Even if Calloway's *Brady* claim had been preserved, it would not warrant reversal of his conviction. The evidence was simply not "suppressed" for *Brady* purposes. Although disclosed late, Officer Marsh's report was presented at trial.

Finally, Calloway has failed to show that the delayed disclosure prevented him from using the disclosed material effectively in preparing and presenting his case. Officer Marsh's report did not reveal any new evidence, but rather corroborated Officer Martinez's identification. Trial counsel had an opportunity to cross-examine Officer Marsh about inconsistencies in the report. The trial court also stated that it was willing to give trial counsel a continuance if counsel decided to subpoena further witnesses after reviewing the report. Trial counsel initially represented that he wanted to subpoena the hotel manager, but ultimately chose not to, instead opting to recall Officer Marsh for further cross-examination.

Calloway has not shown that the delayed disclosure prevented him from using the disclosed material effectively or from presenting his case. Thus, the claim of *Brady* violation fails.

**III.    Trombetta and Youngblood Are Inapplicable**

Calloway argues Officer Martinez's and Officer Marsh's failure to secure a copy of the hotel surveillance video is a violation of their duty pursuant to *Trombetta* and *Youngblood*.  We again disagree.

Calloway failed to raise a *Trombetta/Youngblood* objection at trial, and his claim is therefore forfeited.  (*People v. Chism* (2014) 58 Cal.4th 1266, 1300.)

Regardless, the claim is without merit.  Pursuant to *Trombetta* and *Youngblood,* the prosecution's "failure to retain evidence violates due process only when that evidence 'might be expected to play a significant role in the suspect's defense,' and has 'exculpatory value [that is] apparent before [it is] destroyed.' "  (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 8.)  "Generally, due process does not require the police to collect particular items of evidence.  [Citation.]  'The police cannot be expected to "gather up everything which might eventually prove useful to the defense." ' "  (*People v. Montes* (2014) 58 Cal.4th 809, 837.)

In the instant case, neither the officers nor the prosecutor ever possessed a copy of the surveillance video, which would have triggered a duty to preserve this evidence.

Calloway argues the officers were in constructive possession of the video. Calloway asserts the officers could have recorded the video on their telephones or on their body cameras.  Calloway also observes that our Supreme Court has said, "cases may arise in which the failure to collect evidence could justify sanctions against the prosecution at trial …."  (*People v. Montes, supra,* 58 Cal.4th at p. 838.)  Calloway asserts that this is such a case.

We decline to expand the prosecution's duty to retain exculpatory evidence to include what Calloway describes as "constructive possession" of potentially exculpatory evidence. While we do not minimize the value of preservation of the video recording, the issues relative to loss or destruction of the video are covered by section 1523.

## IV. No Cumulative Error

"[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) We " 'review each allegation and assess the cumulative effect of any errors to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence.' [Citation.] When the cumulative effect of errors deprives the defendant of a fair trial and due process, reversal is required." (*People v. Williams* (2009) 170 Cal.App.4th 587, 646.) Because we find no error in this case, we find no cumulative error.

## V. No Ineffective Assistance of Counsel

For the reasons discussed herein, Calloway's secondary claim of ineffective assistance of counsel also lacks merit. (*See Strickland v. Washington* (1984) 466 U.S 668, 687 [reversal for ineffective assistance requires both deficient performance and prejudice].) Because the officers' testimony about the surveillance video was admissible secondary evidence and its admission was neither unfair nor a violation of Calloway's constitutional rights, there was nothing improper about it and counsel was not deficient in failing to object.

## DISPOSITION

The judgment is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.

14.